UNITED STATES of America, Plaintiff,

v.

GRAHAM MORTGAGE CORPORATION, Richard E. Chapin, Thomas P. Heinz, Manford Colbert, Defendants.

Crim. A. No. 82–80589.

United States District Court,
E.D. Michigan, S.D.

May 17, 1983.

Stephen T. Robinson, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Gregory L. Curtner, Gerald E. Rosen, Noah Yanich, James A. Smith, Michael B. Peisner, Detroit, Mich., Sanford Rosenthal, Southfield, Mich., and Thomas A. Roach, Detroit, Mich., for defendants.

MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND MOTION FOR DISCOVERY OF GRAND JURY MATERIALS

JULIAN ABELE COOK, Jr., District Judge.

The United States [Government] commenced the above-entitled cause of action by filing an Indictment with the Court on December 3, 1982. The Indictment contained six Counts. Count I alleged that Defendants, Graham Mortgage Company [Graham], Richard E. Chapin [Chapin], Thomas P. Heinz [Heinz], and Manford Colbert [Colbert] "did knowingly, wilfully and unlawfully combine, conspire and agree together and with each other to commit an offense against the United States, that is, to give and receive a thing of value pursuant to an agreement and understanding, oral and otherwise, the business incident to and part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person or corporation, in violation of Section 8 of the Real Estate Settlement Procedures Act of 1974 [RESPA]; Title 12, United States Code, Section 2607," all in violation of Section 371 of Title 18, United States Code. Count II alleged that Graham, Chapin, Heinz, and Colbert "accepted, a fee, kickback and thing of value, that is, interim financing in a reduced points charge in connection with the purchase and sale by Rose Hill Realty, Inc. of residential property located at 18304 Ashton, Detroit, Michigan, pursuant to an agreement and understanding, oral and otherwise, the business incident to and part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person or corporation, that is, in return for Rose Hill Realty, Inc.'s referral to Graham Mortgage Corporation of applicants for Federal Housing Administration and Veterans Administration guaranteed and insured residential property loans; in violation of Title 12, United States Code, Section 2607 and Title 18, United States Code, Section 2." Counts III through VI also allege kickbacks relating to real estate settlements, similar to that alleged in Count II.

On February 11, 1983, the Government filed a Superseding Indictment with the Court, which substantially embodied the allegations of the original Indictment, but contained an altered *mens rea* allegation. On March 16, 1983, Graham and Heinz filed Motions to Dismiss the Superseding Indictment. On the same date, Chapin and Heinz filed separate Motions, in which they seek the disclosure of certain information that had been presented to the Grand Jury. On March 17, 1983, Chapin filed his Motion to Dismiss with this Court. On March 31, 1983, the Government filed its opposition to

all of the Defendants' Motions. On April 13, 1983, the Court heard oral argument from the parties on the pending Motions. At the conclusion of oral argument, the Court took the respective Motions under advisement. Those Motions are currently before the Court for resolution.

## I. SUMMARY OF FACTUAL ALLEGATIONS

Graham, a wholly-owned subsidiary of Manufacturers National Bank, is engaged in the mortgage banking business (FHA insured and VA guaranteed mortgage loans). Chapin and Heinz were officers of Graham. Chapin was a Director and Executive Vice President, and Heinz was an Assistant Vice President, who managed the Southfield (Michigan) Branch of Graham. Rose Hill Realty, Inc. [RHR] was a real estate company with which Graham did business. RHR is now dissolved as a corporate entity. Colbert was President of RHR. In addition to performing the traditional business of a realtor, RHR was also engaged in the purchase and sale of Detroit area houses in its own name.

In September of 1975, Graham allegedly agreed to provide RHR with the "interim financing" that RHR needed in order to purchase and sell properties in its own name. In return for each interim loan, RHR was allegedly required to refer two of its regular real estate business customers, who sought VA and FHA mortgage loans, to Graham. From September of 1975 through May of 1979, the Government claims that RHR grossed over one million dollars from the sale of at least seventy Detroit area houses that it had purchased, for the most part, with the interim loans from Graham. RHR allegedly purchased these homes at an average cost of $8,025.00, held them for an average of one hundred fifty two days, and then resold them for an average price of $18,701.00. The purchasers of the RHR owned houses purportedly financed their purchases through the VA and FHA mortgage loans which had been obtained from Graham. The Government contends that RHR paid Graham an average point charge of 1.86 on these transactions. During the same period, at least one hundred and twenty one RHR brokerage clients allegedly financed the purchase of Detroit area houses (not owned by RHR) with FHA and VA mortgage loans obtained from Graham. The Government asserts that the sellers of these properties paid Graham an average point charge of 5.26.

The Superseding Indictment claims in one conspiracy Count, and in five substantive Counts, that the interim financing and reduced points charge which Graham provided to RHR was a kickback in return for RHR's referral of business to Graham, and that this is a violation of Section 8(a) of RESPA. Section 8(a) states:

> No person shall give and no person shall accept any fee, kickback or thing of value pursuant to an agreement or understanding, oral or otherwise, the business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

The Court will now examine the various issues which have been raised by the Defendants in their respective pending Motions (to wit, dismissal of the Superseding Indictment and request for certain Grand Jury material).

## II. MORTGAGE AS "SETTLEMENT SERVICE"

Defendants argue that Section 8(a) of RESPA prohibits only those persons who provide "settlement services" from paying fees for referring such business. They contend that the plain language of Section 8(a) does not cover the payment of referral fees by persons who make mortgage loans because the making of a loan does not constitute a settlement service.

The Government, by contrast, argues that real estate financing is a settlement service. The Government, in arguing that Section 3(3) of RESPA is unambiguous, concludes that real estate financing comes within that definition.

Section 3(3) states that settlement services include "any service provided in connection with a real estate settlement." This

Court must review the language of RESPA in an effort to determine whether the financing of real estate financing constitutes "business incident to or a part of real estate settlement service."

Section 2601 of Title 12, United States Code, which reflects the Congressional purpose in enacting RESPA, is broad, in that "the purpose of this chapter [is] to effect certain changes in a settlement process for real estate that will result ... in the elimination of kickbacks or referral fees that tend to increase unnecessarily costs of certain settlement services." This Court believes, and does determine, that the language of Section 3(3), which defines settlement service, does encompass the provision of real estate financing. Certainly, the provision of real estate financing is a service. In light of the broad Congressional purpose, the clear import of the definition, as set forth in Section 3(3), would be to include real estate financing within the definition of a settlement service.

Although the language of Section 3(3) is broad, general language is not necessarily ambiguous when Congressional objectives require broad terms. Congress realized the need for significant reforms in the real estate settlement process and intended to "stop *all* abusive practices that unreasonably inflate federally related settlement costs to the public," *United States v. Gannon,* 684 F.2d 433, 438 (7th Cir.1981) (en banc). The statutory language "including, but not limited to" which precedes the enumerated services in Section 3(3) explicitly manifests Congress' intent not to limit the general phrase. Although no Courts have construed Section 8(a), the contemporaneous regulations which were promulgated by the Secretary of the Department of Housing and Urban Development [HUD], pursuant to the authority of Section 19(a) of RESPA, 12 U.S.C. Section 2617(a), *have* interpreted Section 8(a). HUD has set forth facts and comments in 24 C.F.R. Part 3500, Appendix B, facts and comments that interpret Section 8(a). The second and seventh illustrations which appear in Appendix B, unequivocally interpret Section 8(a) as a prohibition against the referral of mortgage lending business for a fee. HUD's interpretation, while not binding on this Court, is entitled to deference. Finally, the statute itself demonstrates that HUD's interpretation is the correct one. Section 8(c) states, in part, that "nothing in this section shall be construed as prohibiting ... the payment of a fee ... by a lender to its duly appointed agent for services actually performed in the making of a loan ..." There would be no need for this provision to limit Section 8(a) if Congress did not intend to include mortgage lending within the definition of settlement services in Section 3(3).

## III. REDUCED POINTS AND INTERIM FINANCING AS "THINGS OF VALUE"

■ Defendants contend that the extension of a bona fide loan does not constitute a "thing of value" within the meaning of Section 8(a). The Government, by contrast, argues that interim financing and reduced points are "things of value."

Section 3(2) of RESPA, 12 U.S.C. 2602, provides that "the term 'thing of value' includes any payment, advance, funds, loan, service or other consideration." This Court believes, and does determine, that the interim financing, which the Superseding Indictment alleges to have been given and accepted in return for the referral of business, falls squarely within two of the terms used to define a thing of value, i.e., funds and loans.

## IV. DUE PROCESS CONSIDERATIONS

Defendants assert that RESPA, as applied in this action, is unconstitutionally vague. They contend that any ambiguity in the statute must be construed in their favor, citing *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221–22, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952). They contend that the Courts have applied the rule of lenity in construing ambiguous criminal statutes, and of not extending criminal statutes by implication, citing *Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980); *Adamo Wrecking v. United States,* 434 U.S. 275, 98 S.Ct. 566, 54 L.Ed.2d 538 (1978). The Defendants argue

that because (1) mortgage lending can be read into the definition of settlement service, and (2) the provision of interim financing and reduced points can be read into the definition of a thing of value, the criminal penalties of Section 8 of RESPA should not apply to the alleged referral of mortgage lending business which is at issue in the instant cause.

The Government, by contrast, argues that the applicable sections of RESPA are clear and unambiguous, and that the prosecution of the Defendants under the instant Superseding Indictment does not offend Constitutional principles of due process.

■ The Court has carefully reviewed the applicable sections of RESPA, and has found them to be clear and unambiguous, especially when evaluated in light of the broad Congressional intent. The Court, therefore, must reject the Defendants argument, which is premised on a position that the applicable sections of RESPA are vague and ambiguous.

## V. MENS REA REQUIREMENT

The Defendants argue that, in order to indict and convict a person of a violation of Section 8(a), the prosecution must allege and establish that they had knowledge that their actions would violate the law by tending to increase the cost of settlement services. They assert that the Superseding Indictment is fatally defective because the Government only alleges that the Defendants knowingly and wilfully gave a thing of value pursuant to an agreement (to wit, business which is incident to real estate settlement services would be referred to another person), and does not allege that the Defendants knew that these acts would tend to increase the cost of settlement services. Starting from the position that the requirement of *mens rea* or scienter has been reviewed as an essential prerequisite to criminal punishment in order to maintain fairness and legitimacy in the law, the Defendants conclude that a conviction cannot be obtained unless they acted with an intent to violate the law *and thereby raise costs,* citing *Morissette v. United States,* 342

U.S. 246, 263, 72 S.Ct. 240, 249, 96 L.Ed. 288 (1951); *United States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). *See also United States v. Pawelek,* No. 79–CR–498 (N.D.Ill.1979).

The Government argues that the Defendants' reliance on *Morissette,* and *Gypsum,* is misplaced, noting that the Seventh Circuit, in *United States v. Gannon,* 684 F.2d 433 (7th Cir.1981) found no support in the legislative history for the contention that the Government's burden in a Section 2607 prosecution includes a showing "that [the accused] knew that each payment was being passed on directly to the bank's customers," 684 F.2d at 440. The Seventh Circuit concluded that "a sense of realism alone should have informed [the accused] that the customers would eventually bear the cost of the extra payments. We hold this as sufficient to meet any degree of knowledge required under Section 2607(b)," 684 F.2d at 440.

■ The Court has carefully reviewed all of the arguments, and believes that the contention of the Defendants is without merit. This Court believes, in line with the rationale expressed by the Seventh Circuit in *Gannon, supra,* that, in order to obtain a conviction, the Government need not establish that the Defendants knew that each payment was being passed on directly to the consumers. Certainly a sense of realism should have informed them, like the accused in *Gannon, supra,* that the consumers would eventually bear the cost of any unlawful kickbacks. This sense of realism, standing alone, is sufficient to meet the *mens rea* requirement under the instant Indictment.

## VI. DOUBLE JEOPARDY

Defendants argue that if the Government proves them to be guilty of any one of Counts II through VI (the substantive RESPA violations), it will also have proven them to be guilty of the conspiracy in Count I without additional proof. Therefore, the Defendants argue that the Fifth Amendment prohibition of being placed twice in

jeopardy mandates the pretrial dismissal of the conspiracy Count.

In opposition, the Government argues that the conspiracy Count in the Superseding Indictment is a lesser included offense of the substantive Counts. The Government contends that while the double jeopardy clause in the Fifth Amendment protects against (1) a second prosecution for the same offense following an acquittal, (2) a second prosecution for the same offense following a conviction, and (3) multiple punishments for the same offense, there is no requirement that the Government not proceed to prosecute a given Defendant for the violation of a lesser included offense in the same trial.

■ This Court notes that the Supreme Court has recognized the right of the Government to try a Defendant simultaneously for the greater and lesser included offenses. This right is implicit in Federal Rule of Criminal Procedure 31(c) which states, in part, that "the Defendant may be found guilty of an offense necessarily included in the offense charged...." Inasmuch as there is no impropriety in trying a Defendant simultaneously for the greater and lesser included offenses, it is proper for the Grand Jury to charge both offenses in the same Indictment, citing *Arnold v. Wyrick,* 646 F.2d 1225 (8th Cir.1981). The Court believes, and does determine, that Count I is a lesser included offense. Therefore, the prohibition against being placed twice in jeopardy is inapplicable in the instant case.

## VII. WHARTON'S RULE

Defendants contend that the conspiracy Count must be dismissed because Congress did not intend to authorize the prosecution of a Defendant on charges of conspiracy to violate Section 8(a). Defendants rely on Wharton's Rule, which has been described as "a doctrine of criminal law enunciating an exception to the general principle that a conspiracy in the substantive offenses that is its immediate end are discreet crimes for which separate sanctions may be imposed," citing *Ianelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). De-

fendants contend that where, as here, the parties, who are charged with committing a substantive offense are exactly the same parties, who have been charged with entering into a conspiracy to commit the offense, there can be no conviction on the conspiracy Count.

The Government responds by arguing that the Supreme Court has indicated that Wharton's Rule should be strictly limited to those situations in which it has been traditionally applied (such as adultery, bigamy and dueling), and should not be applied to situations where the harm attendant upon the commission of the substantive offense is not restricted to the parties to the agreement. In the case at bar, the Government contends that the agreement among the Defendants benefited them to the detriment of a much larger group of people (to wit, the consuming public). Furthermore, the Government argues that the "third party exception" to Wharton's Rule which allows the conspiracy charge to stand when the conspiracy involves more persons than are required for commission of the substantive offense would be applicable in the instant case. *See United States v. Foster,* 566 F.2d 1045, 1047–48 (6th Cir.1977), *cert. denied,* 435 U.S. 917, 98 S.Ct. 1473, 55 L.Ed.2d 509 (1979).

■ In making a determination with respect to this argument, the Court can look for guidance in the recent decision of the United States Court of Appeals for the Sixth Circuit, *United States v. Finazzo,* 704 F.2d 300 (6th Cir.1983). The Sixth Circuit, in that case, applied a test, which was first set forth in *Ianelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), for determining whether Wharton's Rule was applicable. The Court focused on three factors: (1) Are the parties to the agreement the only persons who participate in the substantive offense? (2) Does the crime have consequences only on those parties or also on society at large? (3) Does the agreement connected with the substantive offense pose the same threat to society "that the law of conspiracy seeks to avert?" 420 U.S. 782–83, 95 S.Ct. at 1292. In the

instant action, the parties to the agreement are the only persons who participated in the substantive offense. Further, the agreement, which is connected with the substantive offense, poses the same threat to society "that the law of conspiracy seeks to avert." However, unlike the traditional offenses for the application of Wharton's Rule, which include adultery, incest, bigamy and dueling, the crime, in the instant case, has consequences not only on the persons who were directly involved, but also on society at large. Indeed, the very intent of the Congress in enacting RESPA was to protect unwitting consumers from the misdeeds of others. This Court believes that the Sixth Circuit, by implication, recognized the third party defense in *Finazzo, supra.* In this case, the third party exception to Wharton's Rule is applicable, inasmuch as the crime in question has adverse consequences on society at large, which appear to be the motivating force behind the enactment of RESPA. Therefore, this Court believes that it must reject the Defendants' argument based on Wharton's Rule.

## VIII. STATUTE OF LIMITATIONS ARGUMENT

Chapin argues that "the only act recited in the Indictment connecting Chapin with the alleged conspiracy is the September, 1975 letter in which he agreed to extend interim financing to RHRI in return for the referral of real estate settlement service business." He says that because "all of the overt acts charged by the Government as having occurred within five years of the date of the Indictment were not in furtherance of the foregoing agreement," the prosecution against him is barred by the statute of limitations.

In response, the Government contends that Chapin's Motion, which asks this Court to look behind the Superseding Indictment, must be dismissed as premature. It notes that the Superseding Indictment clearly contains allegations which are sufficient to charge violations of 18 U.S.C. 371, 12 U.S.C. 2607 and 18 U.S.C. 2. Count I charges that the Defendants unlawfully conspired to vio-

late RESPA from September of 1975 through May of 1979. Paragraph D alleges thirteen overt acts which the Defendants have committed or caused to have been committed within the past five years. Since the statute of limitations on a conspiracy charge runs from the date of the last overt act of the conspiracy, the Government asserts that prosecution on Count I is not barred. It further contends that, inasmuch as Counts II through VI charge that the Defendants committed the substantive RESPA violations within the past five years, the statute of limitations does not bar the prosecution of those Counts. The Government concludes by arguing that since the Superseding Indictment contains sufficient allegations with which to charge violations within the statute of limitations, Chapin's Motion to Dismiss the Superseding Indictment on statute of limitations grounds must be denied.

■ This Court believes that it cannot, and should not, look behind the Indictment to determine whether prosecution is barred by the statute of limitations. In this case, as correctly described by the Government, the Superseding Indictment alleged overt acts in furtherance of a conspiracy, which transpired within five years preceding the filing date of the Superseding Indictment. Therefore, the Court believes, and does determine, that it must deny Defendants' Motion to Dismiss, which is based on statute of limitations grounds, without prejudice.

## IX. MOTION FOR DISCOVERY OF GRAND JURY MATERIALS

Chapin and Heinz have filed a Motion For Disclosure Of Grand Jury Matters, contending that the "hasty preparation and submission" of the Superseding Indictment leads to the inference that (1) the Grand Jury did not have time to consider new evidence, (2) did not have time to reconsider the prior evidence, and (3) did not receive sufficient instructions on the law. The Defendants further infer that the Grand Jury had been previously instructed that no proof of intent was required to make out a substantive RESPA violation. They argue

that the strong inference of a hasty and ill considered Grand Jury action, as well as the suspicion of prosecutorial irregularity, should mandate an Order from the Court for the disclosure of pertinent matters before the Grand Jury.

The Government responds by contending that it had previously advised the Defendants that the Grand Jury neither heard additional evidence nor received additional instructions on the law during the interval between the return of the original Indictment and the return of the Superseding Indictment. The Government also argues that a Grand Jury need not hear or receive additional evidence before returning a Superseding Indictment. *See United States v. Vadino,* 680 F.2d 1329, 1333 (11th Cir.1982).

The Government notes that Chapin and Heinz are asking this Court to "presume" from the absence of the words "knowingly and wilfully" from the original Indictment that the Grand Jury did not have any evidence from which it could find that they violated the law with knowledge and wilfulness. It argues that such a presumption is logically unsound, and is judicially recognized as such, citing *United States v. James,* 290 F.2d 866, 869 (5th Cir.), *cert. denied,* 368 U.S. 834, 82 S.Ct. 60, 7 L.Ed.2d 36 (1961). The Government says that it is not necessary to instruct the Grand Jury on the definition of the words "knowingly and wilfully" prior to its return of a Superseding Indictment, inasmuch as Courts have held that even erroneous instructions do not automatically impact upon an otherwise proper Indictment unless the Grand Jury had been deceived or misled, *United States v. Wright,* 667 F.2d 793 (9th Cir.1982). In this case, the Government submits that it is difficult to see how any "irregularity" could have been created from the failure of a Grand Jury to receive instructions on the words "knowingly and wilfully." *See United States v. Hart,* 513 F.Supp. 657 (E.D.Pa. 1981).

The Court, after reviewing the arguments of both parties, believes that Chapin, Heinz and Graham have failed to demonstrate the particularized need which would

justify disclosure of Grand Jury materials. A presumption of regularity attaches to Grand Jury proceedings, *United States v. Woods,* 544 F.2d 242, 250 (6th Cir.1976), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 (1977). In this case, neither of the Defendants have brought forth a sufficiency of information which would justify this Court in overcoming the presumption of regularity and requiring the Government to disclose otherwise confidential Grand Jury materials. Therefore, the Court will deny the Defendants' Motion.

SO ORDERED.