**UNITED STATES of America, Plaintiff-Appellee,**

v.

**GRAHAM MORTGAGE CORP., Richard E. Chapin, Thomas P. Heinz, Defendants-Appellants.**

**Nos. 83–1628, 83–1629.**

United States Court of Appeals, Sixth Circuit.

Argued March 27, 1984.

Decided July 12, 1984.

Rehearing and Rehearing En Banc Denied Sept. 26, 1984.

James A. Smith (argued), Bodman, Longley & Dahling, Thomas A. Roach, Donovan, Hammond, Ziegleman, Roach & Sotiroff, Detroit, Mich., for defendants-appellants.

Leonard R. Gilman, U.S. Atty., Stephen T. Robinson, Asst. U.S. Atty. (argued), Detroit, Mich., for plaintiff-appellee.

Before KENNEDY and WELLFORD, Circuit Judges; and PECK, Senior Circuit Judge.

PECK, Senior Circuit Judge.

This appeal involves the issue of whether, for purposes of a criminal prosecution involving § 8(a) of the Real Estate Settlement Procedures Act of 1974 (RESPA), 12 U.S.C. § 2607(a),[1] the making of a mortgage loan is a settlement service. Before this court appellants contend that the making of mortgage loans at a reduced charge of points[2] in exchange for referrals of

---

**1.** Section 8(a) of RESPA, 12 U.S.C. § 2607(a), provides:

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service in-

volving a federally related mortgage loan shall be referred to any persons.

**2.** Black's Law Dictionary provides the following definition of "point":

The word "point" as used in home mortgage finance industry denotes a fee or charge equal to one percent of principal amount of loan which is collected by lender at time the loan

mortgage loan applicants, which was the substantive activity the indictment alleged to be illegal, is not prohibited by § 8(a) of RESPA because the making of a mortgage loan is not "a real estate settlement service."[3] The district court, in an opinion and order denying appellants' motion to dismiss the indictment, held that the making of a mortgage loan is a settlement service. *United States v. Graham Mortgage Corp.*, 564 F.Supp. 1239 (E.D.Mich. 1983). We reverse.

## I. Facts

A superseding six-count indictment was filed in the Eastern District of Michigan on February 11, 1983 charging four defendants with the misdemeanor of giving and accepting kickbacks in violation of § 8(a) of RESPA, 12 U.S.C. § 2607(a), and with conspiracy to violate § 8(a) of RESPA, 18 U.S.C. § 371. The defendants included Graham Mortgage Corporation (GMC), a wholly-owned subsidiary of Manufacturers National Bank, engaged in the mortgage banking business; Richard E. Chapin, an executive vice-president and director of GMC; Thomas P. Heinz, a vice-president and branch manager of GMC; and Manford Colbert, president of Rose Hill Realty, Inc. (Rose Hill), which was engaged both in traditional real estate brokerage activity and in the purchase, rehabilitation and resale of Detroit-area homes. Colbert is not a party to this appeal.

From September 1975 through May 1979, GMC provided Rose Hill with interim financing, *i.e.*, financing of Rose Hill's purchase, rehabilitation and resale of Detroit-area residences. For each loan it received, Rose Hill agreed to refer to GMC two mortgage loan applicants from its regular brokerage business in addition to referring the purchaser of the rehabilitated house. In turn, GMC, when making Federal Housing Administration (FHA) or Veterans' Administration (VA) mortgage loans to purchasers of the rehabilitated residences sold by Rose Hill, charged Rose Hill fewer points than it charged other sellers.[4] To recoup the income lost through the reduction in points charged to Rose Hill, GMC increased the points charged to sellers of residences referred by Rose Hill and financed by FHA or VA loans.

Prior to trial, appellants filed a motion to dismiss the indictment on the ground, inter alia, that the activity alleged in the indictment did not involve the referral of business "incident to or part of a real estate settlement service" and, consequently, did not violate § 8(a) of RESPA. The district court denied the motion. Treating the question as one of first impression, the court held that the statutory language, viewed in light of both Congress's goal of eliminating kickbacks and referral fees that unduly inflated the cost of settlement services and the interpretation of the statute in the regulations promulgated by the Department of Housing and Urban Development (Secretary or HUD), 24 C.F.R. part 3500, appendix B, prohibited the alleged activity. 564 F.Supp. at 1242–43.

Subsequently, the appellants pleaded guilty to the conspiracy count in exchange for dismissal of the substantive counts.

is made. It is a fee or charge which is collected only once, at inception of loan, and is in addition to constant long-term stated interest rate on face of loan. *V.F. Saul Co. v. West End Park North, Inc.*, 250 Md. 707, 246 A.2d 591, 595, 597.

Black's Law Dictionary 1040 (5th ed. 1979). Points traditionally include both origination fees and loan discount payments. Whitman, *Home Transfer Costs: An Economic and Legal Analysis*, 62 Geo.L.J. 1311, 1341 n. 129 (1974) [hereinafter *Home Transfer Costs*].

3. The appellants also contend that § 8(a) of RESPA, if interpreted to prohibit payments for referrals of mortgage loan applicants to lenders

for a fee, is unconstitutionally vague and that the indictment failed to allege the required degree of criminal intent. Because of our construction of § 8(a) of RESPA, we do not reach these issues.

4. The initial service charge for FHA and VA loans is limited by regulation. 24 C.F.R. § 203.-27(a)(2)(i) (FHA loan); 38 C.F.R. § 36.4312 (VA loan). Moreover, in most cases, borrowers of FHA and VA loans are not permitted to pay discount points and these points are assessed by the lender to another party to the transaction, usually the seller. *Home Transfer Costs, supra*, 62 Geo.L.J. at 1341 n. 129.

Following entry of judgments of conviction, appellants filed a motion for arrest of judgment. In an unpublished order, the court adhered to its decision that the making of a mortgage loan was a settlement service and denied the motion. The appellants then initiated the instant appeal.

## II. Statutory Interpretation

 In reviewing a question of statutory interpretation, we first turn to the language of the statute. *Albernaz v. United States*, 450 U.S. 333, 336, 101 S.Ct. 1137, 1140, 67 L.Ed.2d 275 (1981); *Perrin v. United States*, 444 U.S. 37, 42–43, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979); *Stevens v. United States*, 440 F.2d 144, 146 (6th Cir.1971). Where the language of the statute is ambiguous and can be interpreted to support readings either imposing or not imposing criminal liability on individuals for particular conduct, the court must turn to the legislative history of the statute. *Dixson v. United States*, —— U.S. ——, 104 S.Ct. 1172, 1177, 79 L.Ed.2d 458 (1984) (citing *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971)). *See United States v. Ilacqua*, 562 F.2d 399, 402 (6th Cir.1977), *cert. denied*, 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978). "If the legislative history fails to clarify the statutory language, our rule of lenity would compel us to construe the statute in favor of ... [the] criminal defendants in this case." *Dixson v. United States, supra,* 104 S.Ct. at 1177. *Accord United States v. Faygo Beverages, Inc.,* 733 F.2d 1168, 1170 (6th Cir.1984); *United States v. Ilacqua, supra,* 562 F.2d at 402.

### A. Statutory Language

Section 8(a) of RESPA prohibits the payment or receipt of fees, kickbacks, or things of value in exchange for referrals of "business incident to or part of a real estate settlement service involving a federally related mortgage loan". 12 U.S.C. § 2607(a). Section 3(3) of RESPA defines the term "settlement services" as follows:

the term "settlement services" includes any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, and the handling of the processing, and closing of settlement....

12 U.S.C. § 2602(3). The critical textual question is whether this definition of "settlement services", which does not expressly include within its scope the making of a mortgage loan, properly may be construed to do so implicitly.

The government advances a simple argument in support of its position that the language of § 3(3) of RESPA provides for the treatment of the making of a mortgage loan as a settlement service. The government first contends that the definition of "settlement services", by its own terms, does not purport to contain an exhaustive list of settlement services, but rather denotes "*any* service provided in connection with a real estate settlement." 12 U.S.C. § 2602(3) (emphasis added). The government then contends that the making of a mortgage loan is a service in the sense that it satisfies a borrower's need or demand for money. The government concludes that because the making of a mortgage loan is the service essential to a real estate settlement, it must be incidental to the settlement and fall within the scope of the definition in § 3(3) of RESPA.

 There can be little question that the list of settlement services contained in § 3(3) of RESPA was not intended by Congress to be exhaustive. The language of the definition that the term includes, "but [is] not limited to," the services listed constitutes an explicit recognition that the list was not intended to be exhaustive. Accordingly, the Seventh Circuit upheld a conviction for splitting charges in violation of 12 U.S.C. § 2607(b) based, in part, on its determination that a county counterman's handling of Torrens filings is a settlement

service for purposes of RESPA even though the service is not included in the list. *United States v. Gannon*, 684 F.2d 433, 438–39 (7th Cir.) (en banc), *cert. denied*, 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 248 (1981). *See also id.* at 441 (Cudahy, J., dissenting) (handling of Torrens filings assumed to be settlement service). The determination that the list of settlement services in § 3(3) of RESPA is not exhaustive, however, does not render the government's argument persuasive. The issue before this court is not whether the list in § 3(3) of RESPA is exhaustive; rather, the issue before this court is whether the making of a mortgage loan constitutes the provision of a service "in connection with a real estate settlement."

In arguing that the making of a mortgage loan is a service provided incident to a settlement, the government appears to rely on what it contends is an ordinary meaning of the term "service", *viz.*, that "service" denotes the supplying of some demand or need. Because the making of a mortgage loan supplies the need for money in connection with a real estate settlement, the government concludes that the making of a mortgage loan is a real estate settlement service. The problem with this argument is that, as the government concedes, the meaning of the term "service" varies depending upon the context in which the term is used. *See, e.g., Central Power & Light Co. v. State*, 165 S.W.2d 920, 925 (Tex.Civ. App.1942), *appeal dismissed*, 319 U.S. 727, 63 S.Ct. 1033, 87 L.Ed. 1691 (1943). The government cites no authority in support of its contention that "service" is used in § 3(3) of RESPA in the sense that it urges is an ordinary meaning of the term. In the one case cited by the government, *King v. Central Bank*, 18 Cal.3d 840, 558 P.2d 857, 135 Cal.Rptr. 771 (1977), the court held that where a bank actually provided automobile insurance in conjunction with insurance financing transactions, the bank furnished services within the meaning of the Unruh Act, Cal.Civ.Code § 1801 et seq.; the court, however, declined to hold that all routine insurance financing transactions were services within the meaning of the act. *Id.* at

845, 558 P.2d at 859, 135 Cal.Rptr. at 773. Moreover, to the extent that we have been able to discern any common understanding of the term "settlement services", we find that it supports the position of the appellants. For example, one commentator, who, following the enactment of RESPA, discussed the problem of kickbacks and referral fees in the context of the sale of residences, defined the "conveyancing services industry" to include "all of the ancillary services involved in the transfer of a home." Owen, *Kickbacks, Specialization, Price Fixing, and Efficiency in Residential Real Estate Markets*, 29 Stan.L.Rev. 931, 931 n. 5 (1977) [hereinafter *Kickbacks*]. *See also Home Transfer Costs, supra*, 62 Geo.L.J. at 1359 (proposing definition of "settlement services" that includes the handling of the settlement but not the making of the mortgage loan).

▮ Because of the illumination provided by the list of settlement services in § 3(3) of RESPA, we need not rely upon any purported common understanding of the term "service", assuming that such an understanding exists. *See Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, ·3092, 73 L.Ed.2d 767 (1982); *Perrin v. United States, supra*, 444 U.S. at 42, 100 S.Ct. at 314. Our examination of the illustrative list of services included in § 3(3) of RESPA indicates that the common thread running among the listed services is that each is an ancillary or peripheral service that, unlike the making of a mortgage loan, is not directly related to the closing of a real estate sale covered by RESPA. As § 8(a) of RESPA makes explicit, referrals of "business incident to or a part of a real estate settlement service" are prohibited only where the settlement involves a federally related mortgage loan. 12 U.S.C. § 2607(a). *Cf. Allison v. Liberty Savings*, 535 F.Supp. 828, 831–32 (N.D.Ill.) (RESPA applies only to real estate settlements involving federally related mortgage loans), *aff'd*, 695 F.2d 1086 (7th Cir.1982). Accordingly, unlike the services listed in § 3(3), the making of a mortgage loan is central to any transaction covered by RESPA. In

light of the centrality of the making of a mortgage loan to any RESPA-covered transaction, Congress's failure to specify the making of a mortgage loan in listing settlement services seems inexplicable unless the omission was intended. In short, because the government furnishes no convincing explanation of the absence of the pivotal activity of the making of a mortgage loan from the list of settlement services in § 3(3) of RESPA, it is more likely that the omission was intentional than accidental. *See United States v. Bass*, 404 U.S. 336, 341, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). Accordingly, we do not find that the plain meaning of the language of § 3(3) directs the conclusion that the making of a mortgage loan is a real estate settlement service for purposes of RESPA.

Faced with the ambiguity in the language of the relevant provisions, the government argues that the structure of RESPA compels the conclusion that the making of a mortgage loan is a settlement service. The government relies in particular upon § 8(c) of RESPA, 12 U.S.C. § 2607(c), which provides in relevant part: [5]

> Nothing in this section shall be construed as prohibiting (1) the payment of a fee ... (C) by a lender to its duly appointed agent for services actually performed in the making of a loan....

The government contends that there would be no need for this proviso if residential real estate financing were not a settlement service for purposes of RESPA. The government then concludes that to give full effect to every part of RESPA, the term "settlement services" must be interpreted to include real estate financing.

■ It is a well-worn principle of statutory construction that a statute is to be construed to give effect to every part thereof whenever reasonably possible. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979); *Meade Township v. Andrus*, 695 F.2d 1006, 1009 (6th Cir.1982). Effect can be given to § 8(c), however, without construing "settle-

ment services" to include the making of mortgage loans. Lenders traditionally have been permitted to employ agents to perform some of the services that the lender itself could perform, although they are listed as settlement services in § 3(3) of RESPA, *e.g.,* closing by outside agents, and to charge their fees to the borrower. *Home Transfer Costs, supra,* 62 Geo.L.J. at 1342. Accordingly, that portion of § 8(c) of RESPA quoted above has the significant operative effect of clarifying that a lender's payment of a fee to such an agent does not violate the prohibition of fee-splitting contained in § 8(b) of RESPA.

In sum, neither the plain language of the relevant section nor the structure of RESPA affords an unambiguous reading that requires the imposition of criminal liability on the conduct alleged in the indictment. Accordingly, we turn to the legislative history of the statute.

**B. Legislative History and Administrative Interpretation**

The government contends that even if the language of the relevant statutes is ambiguous, the legislative history of RESPA supports the government's interpretation of the statutes. As the government states, the impetus for passage of RESPA was two-fold. First, a series of articles in the newspapers in the metropolitan Washington, D.C. area exposed abuses in the real estate business that Congress sought to end. 120 Cong.Rec. 28,262 (1974) (remarks of Rep. Blackburn); S.Rep. No. 866, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 6546, 6558 (additional views of Sen. Proxmire) [*hereinafter* Senate RESPA Report]. Second, in 1972 Congress received a joint report on mortgage settlement costs from the Secretary and the Administrator of Veterans' Affairs in which abuses, such as kickbacks and inflationary referral fees, were outlined. HUD–VA Report. *See* RESPA § 2(a), 12 U.S.C. § 2601(a) (referring to report). *See generally* Senate RES-

---

5. 12 U.S.C. § 2607(c) was amended subsequent to the prosecution of the appellants, but the amendment did not affect the language at issue. P.L. 98–181, 97 Stat. 1231 (1983).

PA Report, *supra*, 1974 U.S.Code Cong. & Ad.News 6546–49; *id.* 6558 (additional views of Sen. Proxmire). Bills introduced in 1972 and 1973 to remedy the abuses were not enacted.

In 1974, Senator Brock introduced S. 3164 to regulate certain lending practices and settlement procedures in federally related mortgage transactions. 120 Cong. Rec. 6585 (1974). The definition of "settlement services" in the bill as introduced was substantially identical to that enacted as § 3(3) of RESPA. Following passage by the Senate, the House of Representatives, when initially passing S. 3164, amended the bill by striking all of the Senate's provisions and substituting the provisions of H.R. 9989, which was a House bill generally similar to S. 3164. One significant difference, however, was in the language of the definition of "settlement services". Section 101(5) of H.R. 9989 contained the following definition:

> (5) the term "settlement services" includes the following services when provided in connection with a real estate settlement: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, property surveys, the rendering of credit reports, pest and fungus inspections, and the handling of the closing or settlement. . . .

120 Cong.Rec. 28,267 (1974). This definition, unlike that finally enacted, was closed-ended and did not include the making of a mortgage loan within its scope. The Senate declined to concur in the House amendments. 120 Cong.Rec. 31,629 (1974). At conference, an amended version of the Senate's broader definition of "settlement services" was adopted. H.R.Conf.Rep. No. 1526, 93d Cong., 2d Sess., (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 6546, 6569. The question raised by the government's position is whether Congress, by adopting a definition broader than that contained in the House's amendment, intended to include the making of a mortgage loan within the scope of the term "settlement services".

The government cites two statements in support of its contention that the legislative history of RESPA indicates that Congress intended the making of a mortgage loan to be treated as a settlement service. The first statement relied on by the government is the following excerpt from the 1972 HUD–VA report on mortgage settlement costs:

> In most cases, competition in the conveyancing industry is directed toward other participants in the industry, and not toward the home buying public. Lenders compete to get business from realtors or escrow companies. Title companies compete to get business from attorneys, brokers, or lenders, and so on.
>
> \* \* \* \* \* \*
>
> The competition that exists in this industry . . . is not based on price, because the ultimate consumer has a small voice in that decision. Although this industry is very competitive in many areas, the competitive forces that do exist manifest themselves in an elaborate system of referral fees, kickbacks, rebates, commissions and the like. These practices are widely employed and have replaced effective price competition.
>
> \* \* \* \* \* \*
>
> These referrals or kickbacks paid by or to lawyers, lenders, title insurance companies, real estate brokers and others result in unnecessarily high costs.

HUD–VA Report, *supra*, at 33–34. The second statement relied upon by the government is that of Representative Blackburn in which he summarized the events leading to the 1974 legislation:

> As the Members will recall, in 1970 and 1971 there was a series of articles printed in the local papers here in the Metropolitan Washington area which exposed a series of abuses which were quite common in practice involving the real estate business.
>
> \* \* \* \* \* \*
>
> We found that some realtors would expect to be paid "finder's fees" by the insurance companies or the mortgage

bankers who would handle the majority of their business.

\* \* \* \* \* \*

As a result of these abuses which, in my opinion, were largely limited to the Metropolitan Washington area, a great deal of pressure did develop on the Congress to pass legislation.

120 Cong.Rec. 28,262 (1974) (remarks of Rep. Blackburn). The government contends that these statements compel the conclusion that Congress intended to include real estate financing in its definition of "settlement services". We do not agree.

As an initial point, the HUD–VA Report, although indicative of the problems which Congress intended to address by RESPA, was more concerned with the abuses involved in the real estate conveyancing industry than with those involved in real estate financing. *See Kickbacks, supra,* 29 Stan.L.Rev. at 931 (summarizing HUD–VA report). More significantly, the report, provided to Congress two years prior to the enactment of RESPA, provides no indication as to the scope of the statute as enacted.

Representative Blackburn's comments are similarly unilluminating. Not only are Representative Blackburn's comments not echoed by other congressmen, but the comments were made during the debate on H.R. 9989, which, as noted above, contained a definition of "settlement services" that was substantially narrower than the definition in S. 3164 and clearly did not provide for inclusion of the making of a mortgage loan. In such circumstances, Representative Blackburn's comments are not adequate to indicate that Congress intended to treat the making of a mortgage loan as a settlement service when it enacted RESPA.

In reviewing the legislative history, we are particularly mindful of the narrow definition of "settlement services" contained in H.R. 9989 and the House's amending of S. 3164 to include the narrower definition. Our review of the legislative history of RESPA, however, is not limited to consideration of the narrow definition of "settlement services" in the Senate bill as amended by the House of Representatives because, as noted above, at conference an amended version .of the Senate's broader definition of "settlement services" was adopted. H.R.Conf.Rep. No. 1526, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 6546, 6569. In settling upon the broader language of the Senate version, we do not believe that Congress intended to bring real estate financing within the scope of settlement services for purposes of RESPA. Instead, the following statement by Senator Proxmire indicates that the decision reflected an intention to expand the coverage not to the making of a mortgage loan but rather to the activities of realtors:

It should also be noted that the conference report retains the broader definition of settlement charges included in the present law. This definition has been interpreted by HUD to include real estate sales commissions. Congress attempted, in 1972, to exclude real estate commissions from the definition of settlement charges but no legislation was enacted. The National Association of Realtors contacted members of the conference committee on S. 3164 and urged them to exclude real estate commissions from the definition of settlement charges.

However, the conference committee gave no consideration to this request. As a result, real estate commissions along with all other settlement charges are subject to HUD's regulatory authority under section 701.

120 Cong.Rec. 38,851 (1974) (remarks of Sen. Proxmire). Accordingly, we conclude that the legislative history lacks the clarity and force to compel the conclusion that Congress intended to treat the making of a mortgage loan as a settlement service when it enacted RESPA.

As a final argument, the government contends that the administrative interpretations of RESPA promulgated by the Secretary pursuant to § 19(a) of RESPA, 12 U.S.C. § 2617(a), indicate that the making of a mortgage loan is a settlement service.

In particular, the government relies upon the following two illustrations as plainly indicating that the Secretary has interpreted RESPA to prohibit the giving and accepting of kickbacks in return for the referral of mortgage borrowers:

2. *Facts.* B, a lender of Federally Related Mortgage Loans, pays A, a real estate agent, a fee of $25 per transaction purportedly for services performed such as arranging for B's appraiser to visit the property. The purported services for which the fee is paid are services that real esstate [sic] agents frequently perform as part of their services and the fee is really intended to enable B to compensate A for referring potential borrowers to B.

*Comments.* Both A and B are in violation of Section 8 of RESPA, since the fee is being paid in compensation for the referral of business rather than for legitimate services actually rendered by B on behalf of A.

\* \* \* \* \* \*

7. *Facts.* A, a "mortgage originator" or "mortgage broker", receives loan applications and refers borrowers to lenders for a fee.

*Comments.* If A performs services such as obtaining credit and appraisal information or preparing an application for mortgage insurance or guarantee which are of value to the Lender paying the fee, without reference to the referral value of such services, and the fees paid bear a reasonable relationship to the value of such services, the payment of such a fee would not be in violation of Section 8 of RESPA.

24 C.F.R. part 3500, appendix B. The government contends that, although not binding, the administrative interpretations are entitled to deference and should be followed in the absence of compelling indications that the interpretations are wrong. We find this argument to be unpersuasive.

It is undisputed that "authoritative administrative constructions should be given the deference to which they are entitled...." *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Perhaps the most comprehensive articulation of the role of interpretative rules in the construction of statutes can be found in *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944):

We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

█ The interpretations at issue do not fare well under these standards. Of paramount importance is the failure of HUD to adhere to a consistent position. Here, two informal opinion letters issued by HUD subsequent to issuance of the illustrations in 24 C.F.R. part 3500, appendix B, take positions inconsistent with those suggested by the illustrations. HUD Informal Opinion Letter, June 10, 1977, *reprinted in* Barron, Federal Regulation of Real Estate A2.04[3] at app. 81 (rev. ed. 1983) ("The Real Estate Settlement Procedures Act (RESPA) administered by this office does not prohibit a seller from requiring a purchaser to deal only with a certain lender.") [hereinafter Federal Regulation]; HUD Informal Opinion Letter, August 22, 1980, *reprinted in* Federal Regulation, *supra,* A2.04[3] at app. 71 ("RESPA does not prohibit a lending institution from conditioning construction loans to builders on the placement of the buyers' permanent loan with that institution. The consumer's choice is to accept the builder's terms, including financing, or to go elsewhere. While this arrangement may not seem equitable, we know of no federal law that prohibits it.").

*But see HUD* Informal Opinion Letter, April 22, 1983, *reprinted* in Federal Regulation (supp. 1983), *supra,* A2.04[3] at s-app. 6–7 ("Second, the question of whether mortgage lending is a settlement service is addressed in Fact/Comments Nos. 2 and 7 to Appendix B to Part 3500, Title 24, Code of Federal Regulations. These Fact/Comments make it clear that the Department has always considered mortgage lending to be a settlement service."). Additionally, as noted above, the legislative history is effectively devoid of any indication that the making of a mortgage loan was intended by Congress to be treated as a settlement service. In such circumstances, we decline to defer to the administrative interpretation contained in the illustrations. *General Electric Co. v. Gilbert,* 429 U.S. 125, 141–45, 97 S.Ct. 401, 410–12, 50 L.Ed.2d 343 (1976). To hold otherwise would be tantamount to "putting the regulations above the statute." *United States v. Grimaud,* 220 U.S. 506, 519, 31 S.Ct. 480, 484, 55 L.Ed. 563 (1911). *See also United States v. Seelig,* 622 F.2d 207, 210 (6th Cir.1980) ("a person may be held criminally liable for the violation of a regulation, but only if the statute which authorizes the promulgation of the regulations makes the violation of the regulations a crime."), *cert. denied,* 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980).

### III. Conclusion

In light of our holdings that the language of RESPA is ambiguous with respect to the issue of whether the making of a mortgage loan is a settlement service and that the statute's legislative history does not direct any resolution of that issue, "the rule of lenity mandates judgment for the [appellants]." *United States v. Faygo Beverages, Inc., supra,* 733 F.2d at 1170. Accordingly, the judgments of conviction are vacated and the cause is remanded to the district court for entry of final judgments.

Reversed.