**Amos EISENBERG, Ronni Eisenberg, Plaintiffs,**

v.

**COMFED MORTGAGE CO., INC., Comfed Savings Bank, Defendants.**

**Civ. A. No. 84–3486–Y.**

United States District Court,
D. Massachusetts.

March 11, 1986.

Stanley J. Spero, Williams, Jackson & Spero, Boston, Mass., for plaintiffs.

David S. Weiss, Goulston & Storrs, P.C., Boston, Mass., Normand Benoit, Fran Robins-Liben, Tillinghast, Collins & Graham, Providence, R.I., for defendants.

## MEMORANDUM OF DECISION

YOUNG, District Judge.

The plaintiffs Amos and Ronni Eisenberg contend that certain provisions of their mortgage agreement with the defendants Comfed Savings Bank ("Bank") and its wholly-owned subsidiary Comfed Mortgage Co., Inc. ("Comfed") are in violation of the

---

anti-kickback provision of the Federal Real Estate Settlement Procedures Act ("the Act"), 12 U.S.C. § 2607. The case comes before the Court on cross motions for summary judgment.

In October of 1983 the Eisenbergs sought, in connection with their purchase of a home being built for them at 56 Canavan Road, Newton, a $164,000 loan from the defendant Comfed. That loan was to be secured by a mortgage on the new home. The Eisenbergs were fully aware of the structure of their loan and mortgage agreements and were not in any way misled by Comfed as to their terms.

One of those terms was a requirement by Comfed that the Eisenbergs pay, at the time of closing, two and one-half per cent of the face value of their loan as a "mortgage origination fee." Of these two and one-half "points," one and one-half were charged to offset the commitment fee of the same amount of the Bank (to which the Eisenberg mortgage had been assigned by Comfed) to sell the mortgage in the secondary market.

It is the remaining one point of the origination fee to which the Eisenbergs here object. That one point was allocated as follows: one-half as commission to the mortgage originator and the remaining half point partly as commission to the Comfed branch manager and partly to Comfed's overhead. The Eisenbergs contend that this system of charges and allocations violates the Act.

The Act, in relevant part, provides as follows:

(a) No person shall give and no person shall accept any fee, kickback or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

(b) No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage other than for services actually performed.

In addition, 24 CFR 3500.14(e), which interprets the statute, provides:

(e) *Payment for goods or services actually rendered.* The payment and receipt of a thing of value that bears a reasonable relationship to the value of the goods or services received by the person or company making the payment is not prohibited by RESPA Section 8. To the extent the thing of value is in excess of the reasonable value of the goods provided or services performed, the excess is not for services actually rendered and may be considered a kickback or referral fee proscribed by Section 8. The value of the referral itself (i.e. the additional business obtained thereby) is not to be taken into account in determining whether the payment is reasonable.

The Eisenbergs contend that one point of their two and one-half point mortgage origination fee constituted the "payment of a thing of value" bearing no reasonable relationship to the value of services received by them from Comfed. The percentage fee charged by Comfed was, they argue, "received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage" and bore no relation to "services actually performed."

The Eisenbergs support this contention by pointing to the fact that Comfed has admitted that the one point commission and overhead fee was arrived at, if not arbitrarily, at least with considerations in mind other than the actual cost of processing the Eisenberg loan. They further point out that, "although the same routine, mechanical services are provided for each borrower and in each loan transaction, the dollar amount equivalent to the points paid, determined solely on a percentage basis, varies dramatically from mortgage to mortgage."

Thus the Eisenbergs paid much more for their comparatively large loan than would a mortgagor with a smaller loan, even though Comfed provided for each substantially the same services.

Even accepting, *arguendo*, the Eisenbergs' description of Comfed's point system of calculating mortgage origination fees, this Court refuses to stretch the words of the Act to cover that system. First, there has not been any "referral" shown. Comfed did not receive a fee in return for a referral of business to its owner, the Bank. It received a commission for the origination of the loan, and fully assigned its rights in the mortgage to the Bank. The assignment involved the wholesale transfer of Comfed's rights in the loan contract to the Bank; it was not a referral of business but a transfer of vested interests.

More important, however, this Court rules that the making of a mortgage loan is not a "settlement service" within the meaning of the Act. Section 3(3) of the Act defines the term "settlement services" as follows:

> The term "settlement services" includes any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, and the handling of the processing, and closing or settlement. . . .

Clearly, the making of mortgage loans is not included in the list. Moreover, although the list is not meant to be complete, the Sixth Circuit in *United State v. Graham Mortgage Corp.*, 740 F.2d 414 (6th Cir., 1984) concluded that each of the "settlement services" on the illustrative list was "an ancillary or peripheral service that, unlike the making of a mortgage loan, is not directly related to the closing of a real estate sale" covered by the Act, 740 F.2d at 418. The *Graham* court concluded that "Congress's failure to specify the making of a mortgage loan in listing settlement services seems inexplicable unless the omission was intended." The *Graham* court's careful survey of legislative history also failed to uncover any clear Congressional intent to regulate the making of mortgage loans under the Act.

This Court finds the logic of the *Graham* decision compelling.[1] The system of charging mortgage origination fees based on percentages of loan amounts is industry-wide. In the absence of a more unambiguous statement of Congressional intent, this Court refuses to disturb that practice by construing the words of the Act to cover a type of transaction not specifically mentioned in it.

Since the Eisenbergs have no cause of action under the Act, the question of class certification is moot.

In light of what has been said, the defendants' motion for summary judgment is GRANTED and the plaintiffs' motion for summary judgment is DENIED. Judgment shall enter for the defendants.

---

**1.** The Court is not unmindful of the fact that the *Graham* decision was made in the criminal context. That case involved a clear scheme of business referral in exchange for kickbacks, and the defendants were charged criminally under the Act. Still, although the *Graham* court specifically mentions that its strict construction of the Act followed from the requirement therein that it be interpreted in a criminal setting, 740 F.2d at 417, this Court sees no reason to interpret the term "settlement services" differently in this civil case.