TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-901 |
| of | : | |
| | : | June 1, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE STEVEN T. KUYKENDALL, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

Is the Real Estate Commissioner required to take adverse action against a real estate licensee due solely to the licensee's acceptance of a fee for the referral of a client to a mortgage lender in violation of the federal Real Estate Settlement Procedures Act of 1974?

CONCLUSION

The Real Estate Commissioner is not required to take adverse action against a real estate licensee due solely to the licensee's acceptance of a fee for the referral of a client to a mortgage lender in violation of the federal Real Estate Settlement Procedures Act of 1974, provided that the licensee discloses the receipt of the referral fee and complies with all other applicable California laws.

ANALYSIS

The federal Real Estate Settlement Procedures Act of 1974 (12 U.S.C. §§ 2601-2617; "Act") **Footnote No. 1** was enacted to prohibit certain industry practices and impose minimum national standards on the real estate settlement services industry, including residential mortgage lending activities. Section 2601 provides as follows:

"(a) The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more

timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices . . . .

" (b) It is the purpose of this chapter to effect certain changes in the settlement process for residential real estate that will result -

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services;

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  ."

The principal prohibitory provisions of the Act pertinent to our inquiry are found in section 2607:

"(a) No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

" (b) No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

" (c) Nothing in this section shall be construed as prohibiting . . . (2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed. . . .

" (d) (1) Any person or persons who violate the provisions of this section shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

"(2) Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(4) The Secretary [of Housing and Urban Development], the Attorney General of any State, or the insurance commissioner of any State may bring an action to enjoin violations of this section.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  ."

For purposes of the Act, "settlement services" are defined in section 2602(1)(A)(3):

"[T]he term 'settlement services' includes any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of processing, and closing or settlement."

Hence, the acceptance by a real estate licensee of an unearned fee for the referral of a client to a particular provider of settlement services involving a federally related mortgage loan **Footnote No. 2** violates section 2607. We are asked whether such acceptance in connection with a referral to a mortgage lender would give rise, in and of itself, to an enforcement action by the California Real Estate Commissioner ("Commissioner") against the licensee. We conclude that it would not.

The Commissioner clearly has no duty or power to take an enforcement action that has not been authorized by the Act or applicable state law. (*Cf.* 75 Ops.Cal.Atty.Gen. 1, 5 (1992).) With respect first to the Act itself, the Commissioner is not authorized under any of its provisions to take an enforcement action in connection therewith. As quoted above, the Act specifically designates only three officers to enforce its provisions: the Secretary of Housing and Urban Development, the Attorney General of any state, and the Insurance Commissioner of any state. (§ 2607(d)(4).) Moreover, the remedies authorized by the Act include a fine or imprisonment (§ 2607(d)(1)), civil liability to the person charged for a settlement service (§ 2607(d)(2)), and an action by the designated enforcement officers to enjoin violations (§ 2607(d)(4)). Accordingly, no action to revoke or suspend a real estate license is authorized to be taken by any of the designated officers.

Turning next to state law, **Footnote No. 3** we find that the Commissioner has the affirmative duty and responsibility of enforcing the provisions of the California Real Estate Law ( Bus. & Prof. Code, §§ 10000-10500; "Law"). **Footnote No. 4** Section 10050 provides as follows:

"There is in the Business and Transportation Agency a Department of Real Estate, the chief officer of which department is named the Real Estate Commissioner."

"It shall be the principal responsibility of the commissioner to enforce all laws in this part . . . in a manner which achieves the maximum protection for the purchasers of real property and those persons dealing with real estate licensees."

Section 10071 provides:

"The commissioner shall enforce the provisions of this part . . . . He has the full power to regulate and control the issuance and revocation, both temporary and permanent, of all licenses to be issued under the provisions of this part, and to perform all other acts and duties provided in this part . . . and necessary for their enforcement."

Section 10175 provides:

"Upon grounds provided in this article and the other articles of this chapter, the license of any real estate licensee may be revoked or suspended in accordance with the provisions of this part relating to hearings."

Accordingly, the Commissioner is charged with the enforcement of the statutory scheme governing the regulation of real estate licensees. If the Law proscribes the same conduct as the Act, the Commissioner would be required to take adverse action against a licensee for acceptance of a referral fee in the described circumstances.

The Law treats specifically the subject of referral fees in section 10177.4:

"(a) Notwithstanding any other provision of law, the commissioner may, after hearing in accordance with this part relating to hearings, suspend or revoke the license of a real estate licensee who claims, demands, or receives a commission, fee, or other consideration, as compensation or inducement, for referral of customers to any escrow agent, structural pest control firm, home protection company, title insurer, controlled escrow company, or underwritten title company . . . ."

Unlike the Act, the Law does not proscribe the acceptance of a fee for referring customers to a mortgage lender. **Footnote No. 5** The Legislature has not followed the decision of Congress to expand the scope of prohibited referral fees.

Of course, other requirements of the Law may be implicated when a licensee obtains a fee for referring a customer to a mortgage lender. For example, the licensee must "disclose to both parties, prior to the closing of the transaction, the form, amount and source of compensation received or expected" with respect to the referral fee. (Cal. Code Regs., tit. 10, § 2904; see §§ 10176, subd. (g); 10177, subd. (d).) While deceit, fraud, and dishonest dealing constitute grounds for taking an adverse action under the Law (§§ 10176, subd. (i); 10177, subd. (j)), our discussion is limited to the receipt of a mortgage loan referral fee, without more, which is in violation of the Act but does not constitute a violation of the Law.

It is concluded that the Commissioner is not required to take adverse action against a real estate licensee due solely to the licensee's acceptance of a fee for the referral of a client to a mortgage lender in violation of the Act, provided that the licensee discloses the receipt of the referral fee and complies with all other applicable California laws.

\* \* \* \* \*

---

**Footnote No. 1**
Unspecified section references herein to the Act are to title 12 of the United States Code.
**Footnote No. 2**
A "federally related mortgage loan" as defined in section 2602 is sufficiently broad to encompass an estimated 80-85 percent of all senior and junior lien home loans in California, representing an annual aggregate home loan volume of approximately $115 billion.
**Footnote No. 3**
Section 2616 provides in part:

"This chapter does not annul, alter, or affect, or exempt any person subject to the provisions of this chapter from complying with, the laws of any State with respect to settlement practices, except to the extent that those laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency. . . . The Secretary [of Housing and Urban Development] may not determine that any State law is inconsistent with any provisions of this chapter if the Secretary determines that such law gives greater protection to the consumer . . . ."

**Footnote No. 4**
Hereinafter, unspecified section references are to the Business and Professions Code.

**Footnote No. 5**
The federal Act did not originally prohibit the acceptance of a fee for referring customers to a mortgage lender. (*United States* v. *Graham Mortgage Company* (6th Cir. 1984) 740 F.2d 414.) In 1992 the Act was amended to specifically include in the definition of covered "settlement services," as quoted above, "the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans). . . ." (12 U.S.C. § 2602(I)(A)(3).) No similar amendment was made to the Law.