UNITED STATES of America, Appellee,

v.

Jeffrey JONES, Appellant.

No. 89–2696.

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1990.

Decided July 13, 1990.

Grover L. Porter, San Bernardino, Cal., for appellant.

Steven E. Holtshouser, St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and BOWMAN, Circuit Judge, and STUART,[*] Senior District Judge.

STUART, Senior District Judge.

On September 9, 1988 the grand jury in the Eastern District of Missouri returned a three count indictment against Jeffrey Jones. He entered pleas of guilty to Count I (21 U.S.C. § 841(a)(1), possession with intent to distribute cocaine) and Count III (18 U.S.C. § 924(c), carrying a firearm during a drug trafficking crime). Count II (18 U.S.C. § 922(g)(1), felon in possession of a firearm) was dismissed under the plea agreement. The Guideline term as computed by the probation officer in the Presentence Report (PSR) was 24 to 30 months for Count I and a mandatory consecutive 60 months term for Count III. However, the PSR pointed out that a "guided departure" under 4A1.3 of the Guidelines might be warranted because the criminal history category as computed significantly underrepresented the seriousness of the defendant's criminal history. The trial court[1] determined that an upward adjustment should be made because the Guidelines did not adequately reflect Jones prior criminal record. The trial court considered Jones' criminal history category to be VI rather than II, thus raising the Guideline range to 210 to 262 months. He imposed a sentence of 210 months on Count I and a 60 months consecutive sentence on Count III for a total of 270 months. After Jones motion to withdraw his pleas was denied, he appealed the sentence. As the upward adjustment is seven-fold, we have closely examined the facts and circumstances.

## I. BACKGROUND

This federal indictment arose out of an incident that took place in St. Louis on August 12, 1988. The St. Louis police stopped a car after the driver had made an illegal left turn. The driver and Jones, the passenger, stepped out of the car as requested. The driver dropped a plastic bag containing 4.9 grams of cocaine. A plastic bag containing 26 baggies of cocaine weighing 42.36 grams fell from between Jones' legs. He was arrested and a .38 caliber revolver and another bag containing 46.46 grams of cocaine were found on his person. He possessed 93.72 grams of cocaine. The federal indictment was issued September 9, 1988.

Jones had previously served time for armed robbery in California. He had pled guilty to the California charge of possession for sale of cocaine on January 19, 1988, but he failed to appear for sentencing and a bench warrant was issued. No court dates had been set in that case at the time of sentencing. On September 14, 1988, Jones pled guilty to involuntary manslaughter in Rialto California. He was arrested on the federal indictment for the crimes involved in this case in St. Louis on October 8, 1988. Because of his confinement in this case, he was unable to appear

---

[*] The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

for sentencing on the involuntary manslaughter charge.

If the armed robbery charge and either one of the two charges to which Jones had pled guilty but had not been sentenced are counted, he would be treated as a career offender under Section 4B1.1 of the Sentencing Guidelines and his career offender's criminal history category raised to Category VI. The trial court determined that the Guidelines were ambiguous. Judge Limbaugh resolved the ambiguity in favor of the defendant and held that the two charges on which Jones had not been sentenced could not be counted as offenses in determining the Guideline term. However, he found that this area had not been addressed properly by Congress and that if the issue had been addressed the two offenses would be counted in determining whether Jones is a career offender. He held that he was, therefore, entitled to depart upward from the computed Guidelines and sentenced Jones as he would have been sentenced under the career offender section 4B1.1.

## II. THE GOVERNMENT'S POSITION

■ The government objected to the failure of the PSR to treat Jones as a career offender. It argued that that provision was applicable because Jones had not been sentenced on these two convictions because of his own conduct. The trial court was correct in treating Section 4B1.2(3) as ambiguous and applying the rule of lenity and resolving the doubts in favor of Jones. *Bell v. U.S.*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). Section 4B1.2(3) provides that convictions are to be counted separately under the provisions of Ch. 4, Part A which uses the term "sentences" rather than "convictions." This difference in terminology is sufficient to create an ambiguity.

## III. ISSUES ON APPEAL

On appeal, Jones raises the following issues for reversal or remand.

1. The court, after finding ambiguity, failed to resolve all doubts in favor of the defendant.

2. The court failed to state in proper detail the aggravating circumstances not considered by the sentencing commission to justify departing upward.

3. The circumstances relied on by the trial court were not sufficiently "unusual" to warrant an upward departure, thereby making the 210 month minimum sentence unreasonable.

4. The trial court mislead Jones about the ramification of his plea bargain with the government and therefore should have permitted him to withdraw his guilty plea.

## IV. DISCUSSION

1. Jones argues that since the court had made a finding that this was an area that Congress had not addressed properly, the rule of lenity announced in *Bell* prohibited the court from making an upward departure. We do not agree.

■ The trial court resolved the ambiguity in favor of the defendant when it determined that § 4B1.1 did not apply because Jones had not been sentenced on the two charges. It then had to look to other Sentencing Guideline provisions to determine whether an upward departure would be justified. The court in this instance applied § 5K2.0 and found as stated in 18 U.S.C. § 3553(b) that "there exists aggravating * * * circumstances of a kind or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." The court did not commit error in deciding that the Sentencing Commission had not adequately addressed a situation where a defendant had not been sentenced because his own conduct prevented the sentencing. This determination does not involve the interpretation of an ambiguous statute in favor of the defendant, but the application of § 5K2.0, the Sentencing Commission's policy statement of Grounds for Departure. The rule of lenity has no application to this determination by the trial court.

■ 2. Jones argues that the trial court failed to sufficiently state acceptable reasons for departing upward as required by 18 U.S.C. § 3553(c). *Diaz–Villafane v.*

*U.S.,* 874 F.2d 43, 50 (1st Cir.1989). Jones states the court's basis for the sentence was "the serious nature of the offense ... together with the prior criminal record." If this was all the trial court had said to justify the upward departure, Jones may have had a point. But a considerable portion of the sentencing procedure was spent discussing the two convictions upon which Jones had not been sentenced and their relationship to the Sentencing Guidelines. The trial court clearly indicated that the reason for its departure was the fact that Jones had not been sentenced on these two convictions and therefore could not be included in the guideline range. There is no merit to Jones' argument on this issue.

3. Jones argues that the circumstances in this case are not sufficiently unusual to warrant a departure but, if the court should find the facts are unusual, the extent of the departure is unreasonable and results in disparate sentencing.

█ In this case, not only had Jones been convicted by his pleas of guilty of two serious offenses, but he had not been sentenced because he did not appear for one sentencing and he could not appear for the other because he was confined on these charges. Therefore, as discussed previously, these convictions were not counted in determining whether Jones was a career offender. These circumstances are sufficiently unusual to support an upward departure. If the district court had not departed upward, Jones would in effect have been rewarded for his failure to appear for sentencing by decreasing his maximum guideline sentence for Count I from 262 months to 30 months.

In addition § 4A1.3 specifically recognizes that when the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, "the court may consider imposing a sentence departing from the otherwise applicable guideline range" and specifically mentions information concerning whether "the defendant was pending * * * sentencing * * * on another charge at the time of the instant offense." This guideline suggests consideration of upward departure, even if the unusual circumstances present here were absent.

█ Jones also argues that an upward departure of seven times the maximum sentence that could have been imposed under the computed guidelines is unreasonable. Were the upward departure based on culpability or other elements of offense conduct, such an increase would seem unreasonable and in all likelihood result in a disparate sentence. Here we are dealing with criminal history and the trial court imposed a sentence that he believed would have been called for if the circumstances present here had been addressed by Congress. The imposition of the minimum sentence that would have been imposed on a career criminal tends toward equal rather than disparate sentencing. Persons who had been sentenced would have been treated as career offenders. The trial court acted properly in treating Jones in the same manner.

The trial court has utilized the departure intended by the Sentencing Commission, which in § 4A1.3 states:

> In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable. For example, if the court concludes that the defendant's criminal history category of III significantly under-represents the seriousness of the defendant's criminal history, and that the seriousness of the defendant's criminal history most closely resembles that of most defendants with a Category IV criminal history, the court should look to the guideline range specified for a defendant with a Category IV criminal history to guide its departure.

The seven-fold enhancement of the sentence over the computed guidelines was guided by this language and is not unreasonable under these circumstances.

4. Lastly, Jones argues that the trial court erred in not permitting him to with-

draw his guilty plea because he was misled by the court as to the effect of the dismissal of Count II on his sentence.

■ In considering the plea agreement, the judge told Jones: "... it's better to have two counts rather than three facing you, and that's probably part of the reason why you changed your mind to enter a plea of guilty because the government is willing to dismiss one of these counts if you do that." As pointed out in the presentence report, Counts I and II would have been grouped under § 3D1.2(c) of the Sentencing Guidelines and a conviction on the additional count would not have affected the guideline range.

■ The trial court's remarks do not entitle Jones to withdraw his pleas of guilty for three reasons. First, the trial court has broad discretion in determining whether to permit a defendant to withdraw guilty pleas. *United States v. Boone*, 869 F.2d 1089, 1091 (8th Cir.1989), *United States v. Dixon*, 784 F.2d 855, 856 (8th Cir.1986), and *United States v. Picone*, 773 F.2d 224, 225 (8th Cir.1985).

Second, his remarks were not such that they misled Jones as to the effect of the dismissal of Count II on the guidelines. He did not in any way indicate that the dismissal of Count II would reduce his sentence on the guideline range. There are other valid reasons why it is better to have two rather than three convictions—the same reasons present in pre-guideline cases when counts were dismissed that carried little or no possibility that consecutive sentence would be imposed. In addition under the guidelines, the extra count would provide a basis for a sentence at the higher end of the guideline range.

Third, and most important, Jones asked to withdraw his plea because the guideline range was raised seven-fold because of his criminal history that was developed in the PSR. The two convictions for which the defendant had not been sentenced were the basis for the court's upward departure. There was no relationship between the trial court's remarks concerning Jones' pleas on two counts rather than convictions on three and the upward departure made. The trial court carefully explained to Jones that the guideline range could not be determined until the PSR had been considered. The trial court had given the defendant all the information he was entitled to on this issue. *See U.S. v. Turner*, 881 F.2d 684, 687 (9th Cir.) *cert. denied*, —— U.S. ——, 110 S.Ct. 199, 107 L.Ed.2d 153 (1989); *U.S. v. Thomas*, 894 F.2d 996, 997 (8th Cir.1990).

The trial court was well within his discretion in refusing to permit Jones to withdraw his pleas of guilty.

The trial court is affirmed.