**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John D. RASCO, Defendant–Appellant.**

**No. 91–6004.**

United States Court of Appeals,
Sixth Circuit.

Argued March 26, 1992.
Decided May 1, 1992.

fice of the U.S. Atty., Memphis, Tenn., for plaintiff-appellee.

Clifton Harviel, Federal Public Defender (argued and briefed), Memphis, Tenn., for defendant-appellant.

Before: JONES, GUY, and BATCHELDER, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

In the present appeal, we address the narrow issue of whether detention in a halfway house or community treatment center upon revocation of a defendant's parole constitutes a sentence of incarceration within the meaning of section 4A1.2(e)(1) of the federal sentencing guidelines. *See* United States Sentencing Commission, *Guidelines Manual,* § 4A1.2(e)(1) (Nov.1991). Because we conclude that the district court correctly held that defendant's halfway house residency upon revocation of his parole fell within the ambit of that provision, we affirm.

I

On July 12, 1990, defendant, John D. Rasco, escaped from the custody of the United States Attorney General, in violation of 18 U.S.C. § 751(a) (1988). Rasco was charged with violating § 715(a) in a one-count complaint filed on July 17, 1990. Rasco was arrested on the charge on November 6, 1990 and entered a plea of guilty on April 24, 1991.

A probation officer prepared a presentence report, to which Rasco responded. Specifically, Rasco contested the probation officer's decision to count an earlier conviction for interstate transportation of stolen securities in computing his criminal history score under Chapter Four of the guidelines. Roughly nineteen years earlier, on January 19, 1971, Rasco had been sentenced to eight years of imprisonment for the stolen-securities conviction. After a successful appeal, this sentence was reduced to six years. Rasco was released on September 25, 1973 through a community treatment center and was thereafter placed on parole. Sometime within the ensuing two years,

Ed Bryant, U.S. Atty. and Amy E. Spain, Asst. U.S. Atty. (argued and briefed), Of-

Rasco violated his parole, and a parole violator's warrant was issued on August 20, 1975. A parole revocation hearing on this warrant was held in June of 1980. Because Rasco was at the time serving a sentence in a halfway house on a separate offense, the parole violator's warrant was not executed on Rasco until July 8, 1980. As a result, Rasco remained at the halfway house beyond what apparently would have been his expected release date of July 8 and was not released until October 24, 1980.[1]

The presentence report recommended that Rasco be assigned three criminal history points for his sentence on the stolen-securities conviction pursuant to section 4A1.1 of the guidelines. Rasco objected on the ground that, because he had been released from imprisonment on that sentence in 1973, the sentence was completed more than fifteen years prior to his commission of the instant offense and, therefore, was excluded from his criminal history score pursuant to section 4A1.2(e)(1).

On July 12, 1991, the district court held a sentencing hearing at which the court considered Rasco's objections to the presentence report. At the conclusion of the hearing, the court accepted the recommendation of the report and sentenced Rasco to twenty-one months of imprisonment, to be followed by a three-year term of supervised release. This timely appeal followed.

## II

■ Rasco's objection to the counting of his stolen-securities conviction under the sentencing guidelines challenges the district court's application of the guidelines to the undisputed facts of his case. Because the proper interpretation of the guidelines is an issue of law, our review is de novo. *United States v. Edgecomb,* 910 F.2d 1309, 1311 (6th Cir.1990).

■ The sentencing guidelines direct the district court to determine the defendant's criminal history score in accordance with the provisions of Chapter Four. U.S.S.G. § 1B1.1(f). Section 4A1.2 defines many of the terms used elsewhere in Chapter Four and instructs the court on the manner in which the defendant's criminal history score is to be calculated. The dispute in this case concerns the proper interpretation of section 4A1.2(e), which sets forth the time period within which a prior sentence must have been imposed or served to fall within the criminal history calculation. Section 4A1.2(e)(1) provides as follows:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

*Id.* § 4A1.2(e)(1).

■ The United States contends that Rasco's stolen-securities conviction should be counted under the second sentence of section 4A1.2(e)(1) due to his halfway house residency from July 8, 1980 to October 24, 1980. Although Rasco was released from his stolen securities incarceration in 1973 and thereafter placed on parole, he violated this parole in 1975 and first began serving his sentence on the parole violation on July 8, 1980. Thus, argues the United States, because Rasco was serving a sentence based upon the stolen-securities conviction and sentence within fifteen years of his commission of the present offense, that sentence should be counted under the second sentence of section 4A1.2(e)(1).

Rasco points out, however, that section 4A1.2(e)(1) applies only to sentences exceeding thirteen months that "resulted in the defendant being *incarcerated*" during the fifteen years preceding the current crime. *Id.* § 4A1.2(e)(1) (emphasis added).

---

1. Although Rasco submitted a *pro se* brief to this Court alleging that his detention from July to October of 1980 was imposed for violation of his parole on a different conviction, the district court found as a factual matter that Rasco's detention resulted from the violation of his parole on the stolen-securities conviction. *See* J.A. at 19–20. We have no reason to believe that the court's determination on this issue was clearly erroneous.

Rasco argues that, because his detention in a halfway house upon the revocation of his parole did not constitute "incarceration" within the meaning of section 4A1.2(e)(1), that section does not permit the counting of his earlier stolen-securities sentence.

The guidelines do not expressly address whether residency in a halfway house or community treatment center constitutes imprisonment for purposes of Chapter Four.[2] While section 4A1.2(b)(1) explains that "[t]he term 'sentence of imprisonment' means a sentence of incarceration," *id.* § 4A1.2(b)(1), the guidelines neither define "incarceration" nor state whether detention in a halfway house or community treatment center constitutes "incarceration" for purposes of computing a defendant's criminal history score. Rather than presuming the guidelines' silence on this point to have been merely an oversight in drafting, we prefer to view this apparent lacuna in the guidelines as indicative of the Sentencing Commission's intent that the sentencing court adopt a functional approach to resolving this issue, one that focuses on the *reason* for the defendant's detention, rather than an approach focusing exclusively on the *place* of the defendant's detention.

We take, as our starting point for this approach, section 4A1.2(k); it provides, in relevant part, as follows:

(1) In the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points for § 4A1.1(a), (b), or (c), as applicable.

(2) . . .

(B) Revocation of probation, parole, supervised release, special parole, or mandatory release may affect the time period under which certain sentences are counted as provided in § 4A1.2(d)(2) and (e). For the purposes of determining the applicable time period, use the following: (i) in the case of an adult term of imprisonment totaling more than one year and one month, the date of last release from incarceration on such sentence (*see* § 4A1.2(e)(1)); . . . and (iii) in any other case, the date of the original sentence (*see* § 4A1.2(d)(2)(B) and (e)(2)).

*Id.* § 4A1.2(k).[3]

Were we to focus solely on the place of detention, this section would offer no more guidance than the other provisions of Chapter Four, because it likewise fails to address whether detention in a halfway house upon parole revocation is a "term of imprisonment." We believe, however, that section 4A1.2(k) expresses the Commission's view that a sentence imposed upon revocation of parole, regardless of whether the sentence is served in prison, a halfway house, or a community treatment center, be added to the original term of imprisonment, requiring the sentencing court to count them as a single sentence for purposes of criminal history scoring. Thus, section 4A1.2(k) precludes a court from treating a sentence imposed upon revocation of parole as a distinct sentence deserving separate counting under section 4A1.1(a), (b), or (c). Given the many forms that a parole revocation sentence may take, we are confident that the purpose of this section is best served by requiring the sentencing court to focus upon the fact that the sentence was imposed because of the defendant's viola-

---

**2.** The guidelines appear to treat community-treatment-center and halfway-house detention as equivalent. *See, e.g.,* U.S.S.G. § 5F1.1, comment. (n. 1).

**3.** At oral argument, counsel for the defendant argued that § 4A1.2(k) is expressly limited to sentences of thirteen months or less and pointed for support to the first sentence of the commentary to note eleven of this section, which states that "[s]ection 4A1.2(k) covers revocations of probation and other conditional sentences

where the original term of imprisonment imposed, if any, did not exceed one year and one month." U.S.S.G. § 4A1.2, comment. (n. 11). This language, however, was clearly not meant to *exclude* sentences of greater than thirteen months from the strictures of § 4A1.2(k). Indeed, the commentary expressly covers longer sentences, stating that, "[i]f the sentence originally imposed . . . exceeded one year and one month, the maximum three points would be assigned." *Id.*

tion of his parole, rather than on the place where the sentence was served.

This interpretation of section 4A1.2(k) is given added weight by the commentary to that section, which explains the import of section 4A1.2(k) as follows:

> [r]ather than count the original sentence and the resentence after revocation as separate sentences, the sentence given upon revocation should be added to the original sentence of imprisonment, if any, and the total should be counted as if it were one sentence. *By this approach, no more than three points will be assessed for a single conviction, even if probation or conditional release was subsequently revoked.*

*Id.* § 4A1.2, comment. (n. 11) (emphasis added).[4]

On this view, the sentencing court must count a defendant's parole violation as part of the sentence originally imposed upon the substantive crime of conviction rather than as a separate and distinct sentence requiring separate counting under section 4A1.1(a), (b), or (c). This view has been adopted by other courts of appeals as well. *See, e.g., United States v. Cornog,* 945 F.2d 1504, 1510 (11th Cir.1991) ("[T]he [sentencing] court ordinarily should count a conviction that is imposed, and on which the defendant is paroled, outside the window, when the defendant later—within the window—is incarcerated for breaching the conditions of his parole."); *United States v. Harrington,* 923 F.2d 1371, 1375–76 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 164, 116 L.Ed.2d 128 (1991); *United States v. Gardner,* 905 F.2d 1432, 1439 n. 5 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990).

To summarize, the approach we adopt today requires the sentencing court to view a defendant's residence in a halfway house or community treatment center upon revocation of parole as part of the original term of imprisonment. Thus, while the sentence imposed upon revocation should not be counted separately under section 4A1.1, the sentencing court is required to count an otherwise untimely conviction or sentence where the defendant serves the sentence imposed upon revocation of the parole within the time limits set forth in section 4A1.2(e). Applying our holding to Rasco's sentence, we conclude that the district court correctly counted his stolen securities conviction in computing his criminal history score. Although Rasco was released on parole on the sentence in 1973, that parole was revoked, resulting in Rasco's detention from July to October of 1980. Because Rasco served this sentence within fifteen years of the commission of his current crime, section 4A1.2(e)(1) requires that Rasco's stolen-securities conviction be counted.

We recognize that this interpretation arguably conflicts with the background commentary to section 4A1.1. Section 4A1.1 distinguishes between sentences of imprisonment exceeding one year and one month (subsection (a)), sentences of imprisonment of at least sixty days (subsection (b)), and all other sentences (subsection (c)). The background commentary explains that "[s]ubdivisions (a), (b), and (c) of § 4A1.1 distinguish confinement sentences longer than one year and one month, shorter confinement sentences of at least sixty days, and all other sentences, such as confinement sentences of less than sixty days, probation, fines, and residency in a halfway

---

**4.** This view finds additional support in Example D.5 of the "Supplementary Illustrations of Operation of Sentencing Guidelines for Multiple Counts and Criminal History" from the 1987 version of the sentencing guidelines:

> Residence in a halfway house [when assigned as a condition of probation] is treated as a non-imprisonment sentence for purposes of criminal history. Had the defendant been sentenced to imprisonment with a recommendation for halfway house placement, the sentence would be treated as a sentence of imprisonment.

U.S.S.G. app. E at 5 (ex. D.5) (Dec.1987); *see also United States v. Vanderlaan,* 921 F.2d 257, 260 n. 3 (10th Cir.1990) (citing this example with approval), *cert. denied,* —— U.S. ——, 111 S.Ct. 1429, 113 L.Ed.2d 481 (1991). Although this illustration was not officially adopted by the Sentencing Commission, it gives added force to the position we consider correct—namely, that the court should focus upon the purpose of the detention rather than upon the place at which the sentence is served.

house." U.S.S.G. § 4A1.1, comment. (backg'd). This commentary seems to equate confinement sentences with sentences of imprisonment and distinguish both from residency in a halfway house. We do not read this commentary, however, as categorically excluding detention in a halfway house from the definition of a "sentence of incarceration" for purposes of computing the applicable time period under section 4A1.2(e), nor do we read it as excluding halfway house placement from the definition of a "sentence of imprisonment" under section 4A1.2(k). Such an interpretation would elevate the importance of a defendant's place of detention over the reason for which the detention was imposed, thereby frustrating the position of section 4A1.2(k), that a sentence imposed upon revocation of parole be added to the original sentence regardless of where that sentence is served. To the extent that the commentary to section 4A1.1 conflicts with the mandates of section 4A1.2(k), we conclude that section 4A1.2(k) controls.

We also decline the parties' invitation to resolve the issue before us on the basis of two prior dispositions of this court, *United States v. Jalili*, 925 F.2d 889 (6th Cir.1991), and *United States v. Strozier*, 940 F.2d 985 (6th Cir.1991). *Jalili* and *Strozier* both addressed the definition of incarceration and imprisonment under section 5C1.1 of the guidelines. The guidelines, however, caution against attempting to achieve definitional coherence across numerous provisions, and explicitly provide that, while "[d]efinitions of terms also may appear in other sections[,].... [s]uch definitions are not designed for general applicability; therefore, their applicability to sections other than those expressly referenced must be determined on a case by case basis." U.S.S.G. § 1B1.1, comment. (n. 2). Accordingly, we do not find *Jalili* and *Strozier* apposite to the issue before us.

As a final note, Rasco demands that the rule of lenity requires that this Court interpret any ambiguity in the guidelines in favor of the criminal defendant. In our view, the position we adopt today does just that. Although our holding does result in a somewhat longer sentence in the case at bar, the position urged by Rasco would require a sentence imposed upon revocation of parole to be always counted separately for criminal history purposes, thus requiring a sentencing court to add additional points for each separate parole violation, above and beyond the points imposed for the original term of imprisonment. Under this approach, a defendant with a prior sentence of imprisonment exceeding thirteen months and imposed within the fifteen year time limit, who later violated his parole, would receive four or more criminal history points. We choose instead to adopt the Commission's more lenient position, under which a defendant in such circumstances receives no more than a maximum of three criminal history points in accordance with section 4A1.2(k).

## III

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.