**UNITED STATES of America**

v.

**James E. SCHULTZ.**

**No. CR-1-92-040.**

United States District Court, S.D. Ohio, W.D.

Dec. 22, 1992.

Thomas W. Miller, W. Kelly Johnson, Cincinnati, OH, for defendant.

William Edward Hunt, U.S. Dept. of Justice, Cincinnati, OH, for the U.S.

## SENTENCING ORDER

SPIEGEL, District Judge.

This matter is before the Court on the Defendant's objections to the Pre-sentence Report. A hearing was held on November 19, 1992, at which the parties offered evidence in support of their arguments. Subsequently the parties submitted the following briefs in connection with the issues raised at the hearing and the Defendant's objections to the Pre-sentence Report: the Government's Sentencing Memorandum (doc. 26), and the Defendants Proposed Finding of Fact and Conclusions of law (doc. 27).

## BACKGROUND

The Defendant, James E. Schultz, entered a conditional plea of guilty to the unlawful possession with intent to distribute in excess of one kilogram of a form of tetrahydrocannabinol ("THC"), in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. 841(b)(1)(C). THC is a schedule I controlled substance.

The substance in question is a very dark, non-pourable, extract of the marijuana plant, with a tar-like consistency and a THC content of between 10 to 14 percent. Microscopic examination revealed that the substance contained no identifiable plant fibers. According to testimony, the substance was extracted from the entire marijuana plant, not simply the flowering tops. The resin from the flowering tops of the marijuana plant is almost universally known as hash or hashish. The substance when seized by law enforcement officers was packed in condoms and plastic tupperware-type containers.

Although the indictment charged the Defendant with possession with intent to distribute hash oil, the Defendant admitted to possession with intent to distribute a form of THC, but did "not admit that this substance was hashish oil." Defendant's Conditional Plea Entry, Doc. 17, at 1. Furthermore, the Defendant "specifically re-serve[d] his right to contest any and all sentencing facts reported to the Court as part of the pre-sentence report." *Id.* Included among those sentencing facts contained in the pre-sentence report was the conclusion that the substance in question was hash oil.

The Government contends that the substance is hash oil and therefore the Defendant's base level calculation under section 2D1.1 of the Federal Sentencing Guidelines ("Guidelines") should be consistent with the 50 to 1 ratio applicable to the possession of hash oil. The Defendant contends that this substance is not hash oil and should therefore have a base level calculation of 5 to 1, consistent with cannabis resin.

Hash oil is not defined in the Guidelines, the United States Code ("Code"), nor in any other authoritative source. Thus, the principal issue before the Court is to determine if, for sentencing purposes, the substance in question may be considered hash oil.

The Defendant also urges the Court to reduce the weight of the controlled substance in question by the weight of the condoms in which the substance was packed. Finally, at the hearing the Defendant objected to the method the Government used to convert the cash seized into grams of hash oil for sentencing purposes.

## DISCUSSION

a) Classifying the Substance in Question

The Court is confronted in this case with a troubling dilemma. Both sides have of-

fered the testimony of extremely knowledgeable and experienced witnesses. The evidence submitted by both parties in this case has been equally credible and reliable. We are thus left, essentially, unaided in our endeavor by this abundance of equally persuasive yet contradictory evidence.

In support of his position, the Defendant called as an expert Dr. Donald Nelson, Pharm. D., a professor of clinical pharmacology at the University of Cincinnati, College of Medicine. Dr. Nelson testified that there are three elements which, in his opinion, must be present for a cannabis extract to be considered hash oil: 1) the substance must be an extract of hashish, that is, resin from the flowering tops of the marijuana plant; 2) the substance must be pourable; and 3) an oil, usually vegetable oil, must be added.

In the absence of these three elements, Dr. Nelson opined, the substance cannot be hash oil. Thus, in Dr. Nelson's opinion, since the substance in question does not contain an external oil, was extracted from the entire plant, not simply the flowering tops of the plant, and finally, is too viscous to pour, Dr. Nelson concluded that the substance could not be hash oil.

Defendant also called Mr. Frank Hassan to testify. Mr. Hassan is the Assistant Director in the Division of Toxicology, Department of Laboratory Medicine and Pathology at the University of Cincinnati Medical Center. Mr. Hassan testified that in his opinion an oil is a viscous but pourable liquid, and that hash oil when prepared properly is extracted from the upper parts of the plant "including the flowery parts." Transcript of Proceedings, November 19, 1992, Doc. 25, at 37. He concluded that there was nothing from his examination of the material in question that indicated it came from the flowering tops of the plant.

Finally, Defendant called as a witness Mr. Lawrence H. Handorf, a retired Cincinnati Police Officer. Mr. Handorf testified that of his twenty years in law enforcement, ten years were dedicated almost exclusively to state and federal narcotics interdiction, and another four years he was in narcotics part time. He has also lectured in the public, private and academic sectors on narcotics and related subjects. Mr. Handorf testified that in his experience, hash oil is a dark pourable liquid, and that he had never seen hash oil in the same form as the substance in question. He also stated that in his twenty years of experience he had never seen hash oil sold in plastic baggies or condoms due to its pourable nature. See Transcript of Proceedings, November 19, 1992, Doc. 25, at 47. Finally, Mr. Handorf testified that, based on his experience and training with the Drug Enforcement Administration ("DEA"), hash and its derivatives comes from Pakistan, Afghanistan and Turkey, not Jamaica where the substance in question purportedly came from. *Id.* at 45–56.

The Government called as an expert, Mr. Robert Krefft, a chemist for the DEA. Mr. Krefft testified that in his opinion the term hash oil is a misnomer. According to Mr. Krefft, hash oil actually refers to a potent extract derived from any part of the marijuana plant out of which the plant fibers or "hairs" have been filtered. Mr. Krefft continued that such a substance is considered hash oil, regardless of whether the extract comes from the flowering tops of the marijuana plant—the hash or hashish—or from the entire plant. The controlling factor, according to Mr. Krefft, is the presence or absence of the plant hairs in a potent cannabis extract, without respect to whether an external oil has been added or whether the material is pourable. As long as the high-THC extract has been filtered to remove the hairs, in Mr. Krefft's opinion, the substance is hash oil.

On cross-examination, Mr. Krefft read the definition of hash oil found on page 37 of a DEA publication *Drugs of Abuse.* According to the manual the term hash oil is a

> misnomer in suggesting any resemblance to hashish, other than its objective, a further concentration. Hashish oil is produced by a process of repeated extraction of cannabis plant materials to yield a dark, viscous liquid, current samples of which average about 20 percent THC. A drop or two of this liquid on a

cigarette is equal to a single joint of marijuana.

Mr. Krefft also testified that due to the relatively high price of hash and its inherent potency, rarely, if ever, is the process of extracting the concentrate known as "hash oil" actually performed on hash itself. Rather, it is almost always, if not always, performed on other parts of the marijuana plant which are less costly and less potent.

It is clear that the Government's and the Defendant's definition as applied to the facts of this case are diametrically opposed. If we are persuaded by the testimony of the Government's witness, we must necessarily find that the substance in question is in fact hash oil. If persuaded by the testimony of the Defendant's witnesses we must necessarily find that the substance, though clearly a potent cannabis extract, is not hash oil for sentencing purposes.

In searching further for a definition of hash oil we find ourselves more profoundly ensnared in confusion. In defining the term "marihuana," 21 U.S.C. § 802(16) provides,

> [t]he term 'marijuana' means all parts of the plant Cannabis sativa L [including] ... the resin extracted from any part of such plant; ... and every compound, ... derivative, mixture or preparation of such plant, ... or resin.

Thus, since hash is merely the resin from the flowering tops of the marijuana plant, hash is defined by the Code as "marihuana." In fact, all resins, extracts, derivatives etc., are simply defined by the Code as marijuana. Consequently, the extract from hash resin—resin from the flowering tops of the marijuana plant—could technically be either marijuana extract or hash

extract. Both terms would be accurate under the Code's definition.

Thus, the Code defines all THC bearing parts of the marijuana plant as well as their derivatives as "marihuana." *United States v. Walton*, 514 F.2d 201, 203–203 (D.C.Cir.1975); *United States v. Kelly*, 527 F.2d 961, 963–64 (9th Cir.1975). Indeed, Mr. Krefft testified that the term marijuana "covers all of the marijuana products such as hashish and hash oil." Transcript of proceedings, November 19, 1992, Doc. 25 at 161.

At first blush, the Code's definition may seem to resolve the uncertainty in favor of the Government, at least insofar as it tends to support Mr. Krefft's position that the term hash oil and marijuana oil are synonymous. In reality, however, this definition generates as much ambiguity as it originally promises to resolve. The reasoning is simple. Because the only definition available for our purposes puts marijuana, hash, its resinous derivatives, etc., all within the same single definition "marihuana," the Guidelines simply create confusion by drawing a distinction for sentencing purposes, without further explanation, between "marijuana/cannabis ... hashish oil ... cannabis resin or hash...." See Sentencing Guidelines § 2D1.1 at 91. The Guidelines' reference to hash oil, therefore, is simply ambiguous, leaving a gap for the courts to fill in difficult, borderline cases such as this one.[1]

Thus, in the end, in place of a definition or a scheme more accurately based on THC content, we are left with ambiguity. In short, in the face of such qualified and persuasive contradictory testimony, the Court is simply forced to make a choice based on nothing short of conjecture. To

---

1. As we have discussed, according to Mr. Krefft, it is the presence or absence of plant fibers or "hairs" which determines whether a potent cannabis extract is hash oil or resin. Yet it is also the Government's position that the policy behind the distinction is to provide stiffer sentences for substances with a higher THC content and potential for abuse. Government's Sentencing Memorandum, Doc. 26, at 2–3.

This, while logical, only leads to further ambiguity. According to the uncontroverted testimony of Dr. Nelson, marijuana can range in THC content from 0 to 20 percent, hash from ½ to 24 percent, and hash oil can contain up to 50–60 percent THC. Transcript of Proceedings, November 19, 1992, Doc. 25 at 69. Thus, high potency marijuana could have a greater THC content than low level hash. More significantly, however, if, as the government contends, the substance in question here, at 10 to 14 percent, is hash oil, than high level marijuana could have a higher percentage of THC then even hash oil.

paraphrase Justice Marshall, in a situation in which a choice has to be made between two readings of the Guidelines, it is appropriate before we choose the harsher alternative, to require the drafters to speak in language that is more clear and definite. *See United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971).

The Court is more than aware that not all terms must have an official definition in order for the district court to be able to apply them. Indeed, words like "marijuana" are to be given their generally accepted meaning in the American Community. *United States v. Walton,* 514 F.2d 201, 204, n. 16 (D.C.Cir.1975); *See United states v. Dinapoli,* 519 F.2d 104, 106–07 (6th Cir. 1975). The Court, however, is simply not persuaded that the substance at issue in this case has been generally accepted in the American community as hash oil, such that in the absence of a relevant definition we can conclude that hash oil is what it is.[2]

■ The Court, therefore, is left with one alternative, and that is to find that the substance in question cannot be considered hash oil for sentencing purposes. In reaching this conclusion we are guided by the principle that an ambiguity in a criminal statute should be resolved in favor of lenity. *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1970); *United States v. Driscoll,* 970 F.2d 1472, 1481 (6th Cir.1992); *United States v. Barry,* 888 F.2d 1092, 1096 (6th Cir.1989). That is, where there is an ambiguity in a criminal statute, doubts are to be resolved in favor of the Defendant. *Id.; United States v. Mobley,* 956 F.2d 450, 452 (3rd Cir.1992); *United States v. Jones,* 908 F.2d 365, 367 (8th Cir.1990); *United States v. Graham Mortg. Corp.,* 740 F.2d 414, 417 (6th Cir.1984). This principal applies not only to the interpretation of substantive criminal laws, but also to the penalties they impose. *Bifulco v. United States,* 447 U.S. 381, 386, 100 S.Ct. 2247, 2251–52, 65

L.Ed.2d 205 (1979). Thus, the rule of lenity applies to the interpretation of the Sentencing Guidelines in the same manner as it applies to criminal statutes. *United States v. Blackburn,* 940 F.2d 107, 109 (4th Cir. 1991); *Jones,* 908 F.2d at 367; *see United States v. Romano,* 970 F.2d 164, 167 (6th Cir.1992); *United States v. Rasco,* 963 F.2d 132, 137 (6th Cir.1992) *cert. denied,* —— U.S. ——, 113 S.Ct. 238, 121 L.Ed.2d 173 (1992); *Mobley,* 956 F.2d at 452; *United States v. Payne,* 952 F.2d 827, 830 (4th Cir.1991); *United States v. Coble,* 756 F.Supp. 470, 475 (E.D.Wash.1991).

■ The Court is bound by precedent to apply the rule of lenity in this case, for the definition of the word hash oil is ambiguous. No evidence has been brought to the Court's attention that there is a general consensus of what hash oil is, no clear, authoritative definition has been cited. Persuasive and contradictory evidence has been submitted on behalf of both parties. There is no more reason to doubt or believe the testimony of Dr. Nelson, than there is the testimony of Mr. Krefft. Mr. Handorf was a credible and informative witness.

Furthermore, just as the definition of marijuana in 21 U.S.C. § 802(16) tends, at first blush, to lend support to the Government's claim on the one hand, it equally obscures the distinction drawn between the categories of cannabis products—marijuana, cannabis resin, hash and hashish oil—as they appear in section 2D1.1 of the Guidelines. The Court is left not with a reasonably applicable definition, but with pure conjecture as to what the substance before the Court is. The rule of lenity thus dictates that we find in favor of the Defendant.

b) Calculation of Weight

■ The Defendant raises in his brief an objection to the fact that the Government included in the total weight of the substance, the condoms in which it was found. The total weight of the substance seized

---

**2.** To further underline the lack of consensus, we note that the Defendant's counterparts were indicted in the Court of Common Pleas, Hamilton County, Ohio, in connection with the very same cannabis extract in question here. The indict-

ment classified the substance as a "schedule I controlled substance, to wit: marihuana resin. . . ." See Indictments, Exhibit D; Transcript of Proceedings, November 19, 1992, Doc. 25, at 49–52.

from the Defendant was approximately 6.7 kilograms, or 6,700 grams. The Defendant urges this Court to reduce the weight of the total amount seized by the weight of the condoms multiplied by the number of condoms used.

The Defendant has concluded that the weight per condom is 1.9 grams. See Testing Report Attached to Defendant's Proposed Finding of Fact and Conclusions of law, Doc. 27. The Defendant contends that "[i]f 350 condoms were utilized as packing material and these condoms were double wrapped, these condoms weighed approximately 1.33 kilograms." Defendant's Proposed Finding of Fact and Conclusions of law, Doc. 27. The Court is unaware that the condoms were "double wrapped," and the Defendant has not offered the Court any guidance as to where this fact appears in the record. Thus, the total weight of 6,700 grams should be reduced by 665 grams (reflecting 1.9 grams per condom multiplied by 350) for a total of 6,035 grams.

### c) Cash Conversion

The Defendant has also contested the price per ounce of hash oil that the government used in converting the seized cash to grams of hash oil for sentencing purposes. According to the DEA, hash oil ranges from $350 to $500 per ounce. The Government used the more favorable computation, $500 per ounce, in its calculation. At the hearing the Defendant argued that the conversion should be based on their estimated price of $1500 per ounce for hash oil.

In light of our finding regarding the nature of the substance, the price per gram of hash oil, be it $500 per gram or $1500 per gram, is irrelevant. This point, therefore, must be readdressed by the parties at the Defendant's sentencing, to ensure that the cash conversion is consistent with the price per gram of cannabis resin or hash in accordance with section 1B1.3(a) of the Guidelines.

### CONCLUSION

The Court has reluctantly resolved this ambiguity in the Guidelines in favor of the Defendant. We are, however, bound by precedent and the rule of lenity to do so. We note that we have not adopted the Defendant's definition of hash oil, nor conclusively determined that the substance in question is marijuana resin or hash. We simply hold that because the Guidelines are ambiguous as applied to the facts of this case, we are compelled to rule in favor of the Defendant. The Court is confident that in the vast majority of instances the conclusion we have arrived at today would not likely be mandated.

Our reluctance is based on a review of the facts of this case and the Defendant's criminal history, particularly with respect to his past importation of marijuana extract from Jamaica. We have no doubt about his culpability. We therefore conclude that his sentence should be at the top range of the appropriate Guidelines.

SO ORDERED.