KRUPANSKY, Circuit Judge,
concurring in part and dissenting in part.
I agree with the panel majority’s conclusions that the district court did not abuse its discretion by finding that a card allegedly written by the defendant was authentic and hence admissible as a handwriting exemplar, and by admitting expert handwriting identification testimony from a forensic document *-418 examiner. Accordingly, I join parts I, II, and III of the majority opinion, and CONCUR in the affirmation of the defendant’s June 1995 conviction.
■ However, the panel majority’s conclusion that Jones’s January 1994 Tennessee court sentence to four years’ incarceration for forgery [1] did not constitute a “prior sentence of imprisonment” under U.S.S.G. § 4Al.l(a) because state authorities permitted Jones to serve that sentence in residential confinement under the Tennessee Community Alternatives to Prison Program (CAPP), was legally erroneous under U.S.S.G. § 4A1.1 and United States v. Rasco, 963 F.2d 132 (6th Cir.), cert. denied, 506 U.S. 883, 113 S.Ct. 238, 121 L.Ed.2d 173 (1992). Accordingly, because I would affirm the lower court’s sentence imposed against Jones, I DISSENT from part IV of the majority opinion.
A federal jury convicted defendant Kathleen Kremser Jones on June 21,1995 on each of the six counts of a superseding indictment[2] stemming from her fraudulent procurement of a Visa credit card issued in another person’s name, and her use of that card to incur approximately $3,748.08 in illegitimate motel charges and automatic teller machine cash advances between July 8 and July 21, 1991. On August 4, 1995, the district court sentenced Jones to serve 27 months in federal prison, to be followed by three years of supervised release. The trial court had determined a 21 to 27 month sentencing range, which was the product of an offense level of nine matched with a criminal history category of VI. The sentencing court further ordered restitution of $3,748.08 and payment of a $300 assessment.
On appeal, Jones has faulted the lower court for counting her previous four year state court prison sentence for forgery entered on January 21, 1994, which she was serving in home confinement, as a “prior sentence of imprisonment exceeding one year and one month” under U.S.S.G. § 4Al.l(a), which accounted fo'r three of her total thirteen criminal history points. Jones contends that a sentence of any length discharged in home confinement should trigger only one criminal history point under U.S.S.G. § 4Al.l(e).[3] If section 4Al.l(c) applies to her January 1994 forgery sentence rather than section 4Al.l(a), Jones should have been charged with, in sum, eleven criminal history points. This would have reduced her criminal history category to V, which, combined with an offense level of nine, would have produced a sentencing range of 18 to 24 months instead of 21 to 27 months. Sentencing Table, U.S.S.G. Chapter 5, Part A. If the appellant was correct, her 27 month sentence would have exceeded her maximum sentencing range by three months.
Chapter Four, Part A of the Sentencing Guidelines (“Criminal History”) defines a “sentence of imprisonment” to be “a sentence of incarceration.” U.S.S.G. § 4A1.2(b)(l). The ordinary meaning of “incarceration” encompasses detention in a public punitive institution as well as other forms of confinement, enclosure, or close constriction.[4] *-417 Clearly, a sentence of imprisonment served in home detention equals a “sentence of imprisonment” under Chapter Four of the guidelines, as the prisoner is “incarcerated” during that term, albeit outside of a public corrections facility. Had the Sentencing Commission intended to restrict the meaning of “imprisonment” to “incarceration in a correctional institution,” it could have so stated.[5] Cf. Rasco, 963 F.2d at 135.
Under U.S.S.G. § 4A1.2, “criminal histoiy points are based on the sentence -pronounced, not the length of time actually served,” id., commentary note 2 (emphasis added), as long as some of that time is actually served. Beyond contradiction, Jones was sentenced to serve four years of “incarceration” or “imprisonment” in January 1994, and had served part of that sentence (in home detention) by the time of her August 1995 sentencing in the case sub judice. The irrelevance of the place of that physical detention was established beyond dispute by this circuit’s controlling decision in United States v. Rasco, 963 F.2d 132 (6th Cir.), cert. denied, 506 U.S. 883, 113 S.Ct. 238, 121 L.Ed.2d 173 (1992), which ruled that detention in a halfway house or a community treatment center upon revocation of parole constituted the equivalent of “incarceration” or “imprisonment” under the criminal history provisions (Chapter Four) of the Guidelines:
The guidelines do not expressly address whether residency in a halfway house or community treatment center constitutes imprisonment for purposes of Chapter Four. While section 4A1.2(b)(l) explains that “[t]he term ‘sentence of imprisonment’ means a sentence of incarceration,” id. § 4A1.2(b)(l), the guidelines neither define “incarceration” nor state whether detention in a halfway house or community treatment center constitutes “incarceration” for purposes of computing a defendant’s criminal history score. Rather than presuming the guidelines’ silence on this point to have been merely an oversight in drafting, we prefer to view this apparent lacuna in the guidelines as indicative of the Sentencing Commission’s intent that the sentencing court adopt a functional approach to resolving this issue, one that focuses on the reason for the defendant’s detention, rather than an approach focusing exclusively on the place of the defendant’s detention.
Id. at 135 (emphasis in the original; note omitted).
The Rasco court further ruled:
We believe ... that section 4A1.2(k)[6] expresses the Commission’s view that a sen *-416 tence imposed upon revocation of parole, regardless of whether the sentence is served in prison, a halfway house, or a community treatment center, be added to the original term of imprisonment, requiring the sentencing court to count them as a single sentence for purposes of criminal history scoring. Thus, section 4A1.2(k) precludes a court from treating a sentence imposed upon revocation of parole as a distinct sentence deserving separate counting under section 4Al.l(a), (b), or (c). Given the many forms that a parole revocation may take, we are confident that the purpose of this section is best served by requiring the sentencing court to focus upon the fact that the sentence was imposed because of the defendant’s violation of his parole, rather than on the place where the sentence was served.
Id. at 135-36.
The panel majority’s effort to distinguish Rasco from the instant cause is less than persuasive. First, the panel majority has attempted to limit Rasco only to encompass eases in which the defendant had incurred a prior revocation of parole. The panel majority misconceives Rasco to rule that time served in a halfway house or community treatment center should be considered time served in “imprisonment” only where the defendant had already served time in prison for a prior offense, and then subsequently incurred additional confinement in a halfway house, community treatment center, or similar environment because he violated his parole or supervised release conditions on that offense.
Contrary to the panel majority’s analysis, however, the absence of a parole violation in the instant appeal is entirely insignificant. The salient applicable principle mandated by Rasco was that time to be served in a halfway house constituted part of a “sentence of imprisonment” under Chapter Four, Part A (Criminal History Category) of the Guidelines, because the place of “imprisonment” was unimportant; rather, the reason for the defendant’s confinement was deemed to control the characterization of such detention time as either the equivalent of time in prison or punishment distinct from time in prison. In Rasco, the defendant served time in a halfway house because he violated his parole conditions, which would justify his imprisonment; thus, the halfway house term was added to his previous sentence of imprisonment to calculate the criminal history points attributable to his underlying prior offense. See Rasco, 963 F.2d at 137. Similarly, a Tennessee court condemned Jones to four years in the state penitentiary because she had committed a felony which warranted a severe penalty; the ultimate place of service of that court-imposed captivity is irrelevant.
The panel majority, however, failed to focus upon the reason for Jones’s detention by the state, but instead addressed the reason for her assignment to home detention. The panel majority resolved that it could not determine Tennessee’s specific reason for consigning Jones to home confinement instead of the state reformatory without consulting Tennessee law, which articulated a public policy favoring reservation of prison space for violent felons. T.C.A. § 40-36-103(1). Because the panel majority posited that the meaning of terms used in the Sentencing Guidelines should be exacted with reference to federal law rather than state law, it declined to consult Tennessee law for purposes of delineating instances wherein “home confinement” equals a “sentence of imprisonment.” Accordingly, the panel majority in effect concluded that because it could not discover the state’s particular motive for placing Jones in home confinement instead of prison, it must assume that the state authorities had intended to punish her by means short of imprisonment.
This analysis derogates against Rasco. The Rasco court expressly posited that the reason for the defendant’s sentence controlled the characterization of that sentence as one of imprisonment or as something else, rather than the place where the sentence would be served. Rasco, 963 F.2d at 135-36. *-415 However, the panel majority’s analysis confused the state’s reason for Jones’s sentence of imprisonment (which is the pertinent Ras-co inquiry) with the reason for the state’s assignment of Jones to a particular place for the service of her sentence (which is irrelevant under Rasco). Because the state’s reason for assigning Jones to home confinement was immaterial, no reference to any state law policy to discover the reason for her detention in this particular place was necessary.[7]
The panel majority’s invocations of Guidelines sections which purportedly differentiate “home detention” from “imprisonment” in contexts other than criminal history computations were again misconceived.[8] Chapter *-414 5, Part F (“Sentencing Options”) dictates that
Home detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment.
U.S.S.G. § 5F1.2.
Chapter 5, Part B (“Probation”) contains a similar proviso:
Home detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment. See § 5F1.2 (Home Detention).
U.S.S.G. § 5B1.4(b)(20) (Policy Statement).
Additionally, Chapter 7, Part B (“Probation and Supervised Release Violations”) directs that:
Any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under § 7B1.4 (Term of Imprisonment), and any such unserved period of community confinement, home detention, or intermittent confinement may be converted to an equivalent period of imprisonment.
U.S.S.G. § 7B1.3(d) (Policy Statement).
These sections of the Guidelines merely authorize district courts to impose home detention as a condition of probation or supervised release where the court could have instead imposed a prison sentence, and empower the district courts to convert an un-served term of home confinement to a term of imprisonment as punishment for violation of the conditions of parole or supervised release. That the Guidelines distinguish between “home confinement” and “imprisonment” in these contexts does not mean that home confinement categorically may not be equated with imprisonment for purposes of determining the defendant’s criminal history category. To the contrary, the Guidelines sections quoted above reflect the interrelationship and substitutability of institutional imprisonment and home confinement, which bolsters the conclusion that, where a defendant has been sentenced to time in a penitentiary but has been permitted to serve that time in alternate environs, that sentence should nonetheless be construed as a sentence of imprisonment under the criminal history assessment sections of the Guidelines.
This federal public policy militates against the panel majority’s windfall award of a reduced sentence to Jones for her 1995 conviction simply because the State of Tennessee had magnanimously permitted Jones to discharge her 1994 custodial penalty for forgery in the comparatively pleasant surroundings of her own home, rather than in the penitentiary to which she had been rightfully condemned. The majority has unjustifiably ignored Guidelines-mandated prison time from the defendant’s instant 1995 sentence by characterizing her prior prison sentence for forgery as a sentence which did not constitute “imprisonment” merely because, as a matter of grace and leniency by the state, that sentence was being served under conditions less onerous than those of a state prison.
Jones was ordered imprisoned by the Tennessee court for four years because she had pleaded guilty to a serious forgery charge. The ultimate conditions of that confinement are irrelevant to the fundamental policy which partially anchors the criminal history sections of the Guidelines, namely that sentencing should in part reflect the seriousness of the defendant’s prior crime(s). The seriousness of such a previous crime is evidenced by the duration, not the place, of the prior punitory confinement sentence. See U.S.S.G. § 4A1.1, comment, (backg’d); Rasco, 963 F.2d at 135. The varying motivations which state criminal justice systems may have for assigning certain recipients of incarceration sentences to home detention.rather than to a state-run house of corrections are immaterial to the characterization of such a convict’s underlying prison sentence as one of “imprisonment” for purposes of tallying his or her criminal history points.
Accordingly, the majority’s reversal of the lower court’s addition of three criminal history points to the appellant’s sentencing calculation for her 1994 state court four year sentence for forgery constitutes legal error. Because I would affirm the sentence imposed *-413 by the trial court, I DISSENT from part IV of the majority opinion, from the vacation of Jones’s sentence, and from the remand of this case for resentencing. ' However, I CONCUR in the affirmation of Jones’s conviction and join parts I, II, and III of the majority opinion.

. On January 21, 1994, in case no. 65060, the Criminal Court of Knox County, Tennessee, convicted Jones of forgery (T.C.A. 39-14-114) committed on April 11, 1991, and sentenced her to four years in the custody of the Tennessee Department of Corrections, but referred her to the Tennessee Community Alternatives to Prison Program ("CAPP”), a state correctional program designed to provide alternative punitive environments for non-violent offenders in lieu of captivity in a "secure confinement facilit[y].” T.C.A. § 40-36-103(1). See J.A. at 53, 60, & 66.

. The jury convicted Jones of one count of mail fraud, 18 U.S.C. § 1341; two counts of using a fictitious or false name to defraud by mail, 18 U.S.C. § 1342; one count alleging the use of an unauthorized access device, 18 U.S.C. § 1029(a)(2); one count of theft or receipt of stolen mail, 18 U.S.C. § 1708; and one count of obstruction of correspondence, 18 U.S.C. § 1702. J.A. at 30-31.

. U.S.S.G. § 4A1.1 provides in material portion;
(a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
(b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
(c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item.

. See, e.g., Webster's Third New International Dictionary (Unabridged) 1141 (1981) (defining the noun "incarceration” to encompass, inter alia, "1. a confining or state of being confined: imprisonment[,]" and defining the verb "incarcerate” as *-417 "1. to put in prison: imprison 2. to shut up or away: confine, enclose”); see also The American College Dictionary 611 (1970) (defining the verb "incarcerate” to mean "1. to imprison; confine. 2. to enclose; constrict closely.”).

. The majority's reliance upon Application Note 2 of the Commentary to U.S.S.G. § 4A1.2, as purportedly supporting the characterization of Jones’s January 1994 forgery sentence as a non-‘'imprisonment” sentence, was misconceived. Note 2 posits, in part, that
[t]o qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence (or, if the defendant escaped, would have served time). See § 4A1.2(a)(3) and (b)(2).
In turn, section 4A1.2(a)(3) provides that
[a] conviction for which the imposition or execution of sentence was totally suspended or stayed shall be counted as a prior sentence under § 4Al.l(c).
(Emphasis added). Additionally, section 4A1.2(b)(2) mandates that
[i]f part of a sentence of imprisonment was suspended, ‘sentence of imprisonment' refers only to the portion that was not suspended.
(Emphasis added).
Thus, Note 2 to section 4A1.2 merely pronounces that sentences entirely suspended or stayed shall be credited for only one criminal history point irrespective of the length of such a sentence, and that suspended portions cf sentences shall not be counted towards calculating the length of a sentence of imprisonment. Obviously, suspended incarceration time will not be served anywhere, and hence is not counted as prison sentence time. However, note 2 does not support the proposition, erroneously embraced by the panel majority, that actual service of a prison sentence in confinement conditions other than physical presence in a penal institution automatically renders such sentence something less than a "sentence of imprisonment."

. U.S.S.G. § 4A1.2(k)(l), which controls, in the criminal history tabulation process, the role of a "prior sentence” which had been imposed as a result of a revocation of parole, commands:
In the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, add the original term of imprisonment to any term of imprisonment
*-416 imposed upon revocation. The resulting total is used to compute the criminal history points for § 4Al.l(a), (b), or (c), as applicable.

.. Indeed, the case sub judice presents a more compelling instance than Rasco for counting the term at issue as a sentence of imprisonment. The Background Commentary to U.S.S.G. § 4A1.1 recites in part:
Subdivisions (a), (b), and (c) of § 4A1.1 distinguish confinement sentences longer than one year and one month, shorter confinement sentences of at least sixty days, and all other sentences, such as confinement sentences of less than sixty days, probation, fines, and residency in a halfway house.
(Emphasis added).
The Rasco court resolved:
This commentary seems to equate confinement sentences with sentences of imprisonment and distinguish both from residency in a halfway house. We do not read this commentary, however, as categorically excluding detention in a halfway house from the definition of a “sentence of incarceration” for purposes of computing the applicable time period under section 4A1.2(e), nor do we read it as excluding halfway house placement from the definition of a "sentence of imprisonment” under section 4A1.2(k). Such an interpretation would elevate the importance of a defendant's place of detention over the reason for which the detention was imposed, thereby frustrating the position of section 4A1.2(k), that a sentence imposed upon revocation of parole be added to the original sentence regardless of where that sentence is served. To the extent that the commentary to section 4A1.1 conflicts with the mandates of section 4A1.2(k), we conclude that section 4A1.2(k) controls.
963 F.2d at 137 (emphasis added).
By contrast, U.S.S.G. § 4A1.1, commentary (backg’d) does not even arguably support the characterization of Jones’s home confinement for forgery as something less than a "confinement sentence” (or "sentence of imprisonment”). Although the Commissioners therein expressly distinguished “residency in a halfway house” from a "confinement sentence,” they did not distinguish "home detention” from a "confinement sentence." The Sentencing Commission’s silence can only be interpreted to reflect an intent not to exclude “home detention” from the general category of “confinement sentences." This conclusion is bolstered by consideration of the more restrictive nature of home detention as compared to halfway house residency, which renders home confinement more akin to institutional incarceration. Whereas halfway house residency is a form of "community confinement” wherein the resident enjoys considerable freedom to engage in a variety of activities outside of the halfway house during "non-residential hours,” U.S.S.G. § 5F1.1 & commentary (n. 1 & 2), a person under home detention is subject to “confinement and supervision that restricts the defendant to his place of residence continuously, except for authorized absences, enforced by all means of surveillance by the probation office. When an order of home detention is imposed, the defendant is required to be in his place of residence at all times except for approved absences for gainful employment, community service, religious services, medical care, educational or training programs, and such other times as may be specifically authorized.” U.S.S.G. § 5F1.2, commentary (n. 1) (emphasis added). Indeed, the basic concept of a "halfway house" is a restrictive, supervisory, rehabilitative environment which is “halfway” between penal confinement and release into the general community. Moreover, the Guidelines permit a sentencing court to impose halfway house residency as a condition of probation or supervised release in any case, U.S.S.G. § 5F1.1 & commentary (n. 1), whereas a district court may impose home detention as a condition of probation or supervised release “only as a substitute for imprisonment." U.S.S.G. § 5F1.2 (emphasis added). Therefore, home confinement is more similar to imprisonment (or a "confinement sentence”) than is halfway house placement. Thus, if time served in a halfway house constitutes "imprisonment” time under Rasco, a fortiori, time served in home detention must also constitute imprisonment time.

. Definitions and concepts adopted for purposes of specific chapters, parts, or sections of the Guidelines do not necessarily control in other chapters, parts, or sections of the Guidelines, if diverse considerations inform their meaning in various contexts. For example, note 1 of the Commentary to U.S.S.G. § 1B1.1 promulgates definitions of various terms "that are used frequently in the guidelines and are of general applicability (except to the extent expressly modified in respect to a particular guideline or policy statement).” Note 2 then postulates:
Definitions of terms also may appear in other sections! Such definitions are not designed for general applicability; therefore, their applicability to sections other than those expressly referenced must be determined on a case by case basis.
See Rasco, 963 F.2d at 137.